**STATE of Minnesota, Appellant,**

**v.**

**Robert LIEN, Respondent.**

**No. 47669.**

Supreme Court of Minnesota.

April 28, 1978.

---

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig H. Forsman, Spec. Asst. Atty. Gen., St. Paul, D. P. Mattson, County Atty., Rochester, for appellant.

Mark G. Stephenson and Roger E. Petersen, Rochester, for respondent.

KELLY, Justice.

This is an appeal pursuant to Rule 29.03, Rules of Criminal Procedure, from a pretrial order of the district court suppressing evidence in a prosecution of defendant for possession of marijuana. The appeal raises the issue of the legality of an unannounced nighttime entry of a dwelling place to execute a search warrant for marijuana. The district court concluded that the search was illegal because the affidavit on which the warrant was based did not contain a sufficient factual showing to justify authorizing either an unannounced entry or a nighttime search. We agree with the district court that the information contained in the affidavit was insufficient to justify inclusion of provisions authorizing either an unannounced entry or a nighttime search. However, we believe that the unannounced entry was later justified by facts which arose at the threshold before the execution of the warrant, and we hold that the unjustified granting of permission for a nighttime execution of the warrant was a statutory violation which under the circumstances does not mandate exclusion of the evidence seized. Accordingly, we reverse the district court's suppression order and remand for trial.

On September 23, 1977, an officer of the Rochester Police Department applied to the county court for a warrant to search defendant and his apartment in Rochester for

marijuana and other controlled substances, drug paraphernalia, and items tending to establish possession. The application and supporting affidavit identified defendant as "Bob," saying that his full name was unknown, and described him as being a white male in his mid-20's, 6 feet tall, of slender build, and having short light brown hair. In the section of the affidavit form provided for the facts tending to establish probable cause, the officer stated as follows:

"Affiant is a Rochester Police Officer assigned to the Rochester-Olmsted Narcotics Division. Affiant has been informed by a reliable confidential informant that within the past 48 hours said informant has been in the apartment occupied by 'Bob', described herein, at 319 Third Avenue Northwest, described herein, and saw a large amount of marijuana on said premises in the possession, control and custody of the person known as 'Bob'.

"Affiant believes said confidential informant to be reliable in that on one occasion said informant made a controlled buy of controlled substances, and on other occasions has given information to affiant concerning drug trafficking in the Rochester area which information has been corroborated through other reliable confidential informants. These instances have occurred within the past six months."

The section in the form relating to nighttime searches read as follows: "A nighttime search is necessary to prevent the loss, destruction or removal of the objects of the search because:" After the word "because" the officer added the phrase "it is unknown when the person described herein will be at the premises described herein." The section relating to the need for a provision authorizing an unannounced entry read as follows: "An unannounced entry is necessary (to prevent the loss, destruction or removal of the objects of the search [and] to protect the safety of the peace officers) because:" The officer simply crossed out the word "because" in this section and did not add any statement specifying why he thought destruction of the marijuana was imminent or the executing officers' safety in danger.

A county court judge found probable cause based on the warrant application and supporting affidavit and issued a search warrant authorizing a nighttime search and unannounced entry.

That evening at 8:50 p.m. three Rochester police officers along with a Minnesota Bureau of Criminal Apprehension agent and a deputy sheriff stationed themselves outside defendant's residence and prepared to execute the warrant as soon as defendant came home. Their information was that defendant probably would return home about 9:00 p.m. While waiting for defendant to arrive, the officers observed several people going in and coming out of defendant's apartment. Shortly after 9:00 p.m. the officers observed a car drive up and a person who fit defendant's description go into the residence.

The officers then approached the building. There was a window by the door, but the curtains were down and the officers could not see into the apartment. The evidence indicates that the door was slightly open. Pushing the door completely open, the officers rushed into the apartment with their firearms drawn. Once in, the officers announced that they were police officers and told everyone to get up against the walls. The officers proceeded to handcuff everyone in the apartment and commenced their search. The search resulted in the discovery of marijuana along with related items including drug paraphernalia.

As we stated earlier, in suppressing the marijuana and other items the district court ruled that the affidavit in support of the application for a search warrant did not contain a sufficient factual showing to justify inclusion of clauses authorizing unannounced entry and nighttime execution of the warrant. The court also rejected the contention that facts arose just before execution of the warrant which independently justified the unannounced entry.

1. There are three leading Minnesota cases dealing with the issue of unannounced entries to execute search warrants: *State v. Parker,* 283 Minn. 127, 166 N.W.2d 347

(1969); *State v. Linder,* 291 Minn. 217, 190 N.W.2d 91 (1971); and *State v. Daniels,* 294 Minn. 323, 200 N.W.2d 403 (1972).

(a) In *Parker,* the first of the cases, the police, while armed with a warrant to search for drugs which did not contain an unannounced entry clause, knocked on the door of a combination restaurant dwelling occupied by the defendant and, when he did not respond, they broke in without announcing their authority. In our opinion, which reversed a suppression order of the district court, we stated that we did not intend to adopt a blanket rule in all gambling and narcotics cases excusing the requirement that officers announce their authority and purpose before entering a suspect's home. However, we indicated that warrants containing express authorization for unannounced entries could be obtained by a showing to the magistrate that announcement would result in the destruction of evidence. Specifically, we stated as follows:

"  *  *  *   [W]here the affidavit in support of a petition for a search warrant sets forth 'exigent circumstances' with sufficient particularity to justify dispensing with the necessity for announcing authority and purpose, and the issuing magistrate includes in the search warrant specific authority to enter the premises without such an announcement, the entry is lawful and evidence thus obtained is not inadmissible on that account. Where the evidence presented to the issuing magistrate discloses facts which are reliably documented and furnish the magistrate with a substantial basis for believing that an announcement will result in the destruction of evidence, the magistrate is authorized to include in the warrant authority to dispense with the announcement. While we do not attempt to catalog all of the factors which are relevant in such cases, the intensity of the surveillance, the reliability of the informant, the corroborating evidence recited, and the criminal record of the defendant are some of the obvious considerations which will govern the magistrate's decision."

Although the warrant in the *Parker* case did not authorize an unannounced entry, we stated that the affidavit in support of the warrant, while not a model, would have been sufficient to justify such a clause. That warrant, which we reproduced in an appendix to our opinion, recited extensive police surveillance of the defendant's premises, which was frequented by known narcotics users, and that a reliable police informant had observed drug sales made there..

(b) The second case involving unannounced entries to execute search warrants is *State v. Linder,* 291 Minn. 217, 190 N.W.2d 91 (1971). In that case the police, who had a search warrant without an unannounced entry clause, knocked down a door without announcing their purpose when, after knocking and shouting "Police," they heard running footsteps. In sustaining the search, we stated that "the activity of someone running, coupled with the common knowledge that narcotics are easily disposed of by flushing them down the toilets, justified the officers' belief that a destruction of evidence was being attempted."

(c) The third case is *State v. Daniels,* 294 Minn. 323, 200 N.W.2d 403 (1972). This case is significant in three respects. First, it clearly articulates our opinion that, if at the time the police obtain a search warrant they have any facts which they believe would justify an unannounced entry, they should present those facts to the magistrate and seek advance judicial authority for an unannounced entry.

Secondly, we addressed ourselves to the question of what sort of showing is necessary to obtain an unannounced entry clause in a warrant, saying as follows:

"The affidavit in the instant case parallels that in *Parker.* The affidavit does not recite a history of police surveillance of the premises, but it does recite in greater detail than did the affidavit in *Parker* the first-hand observations of the police informant, including his having observed defendant make sales at the premises and his having seen heroin there within the immediately preceding 48-hour

period. \* \* \* More significantly, the police statement of belief that 'an unannounced entry is necessary' was preceded by a recital of the informant's statement that defendant 'is very much aware of the police.' This statement of awareness is, to be sure, arguably conclusionary but, in the context of the close relationship of the informant and the defendant disclosed in the affidavit, it is not unrealistic to read it as a shorthand statement of fact, rather than mere assumption, that this particular suspect was resolved immediately to effect disposal if the police presence were discovered."

The third significant element of our opinion in *Daniels* is our statement that even if they have advance judicial authorization of unannounced entries to execute search warrants, police officers "do well either to employ less drastic alternatives or, even though granted a no-knock search warrant, to make a threshold reappraisal of the actual threat of the destruction of evidence."

(d) Although not a search warrant case, our recent decision in *State v. Clark*, Minn., 250 N.W.2d 199 (1977), should be mentioned here. In that case the police, acting on a tip from a reliable informant that narcotics would be purchased by certain named people that evening from Jimmie Pavelka at his apartment, set up surveillance at the apartment and at about 10:50 p. m. observed these people come and then leave a short time later. Police stopped their car, arrested them, and discovered drugs in a search. The police then returned to Pavelka's apartment, knocked on his door, and announced that they were police but not what their purpose was. When Pavelka did not answer, they entered using a pass key and arrested defendant, seizing certain plain-sight items in the process. We held that while Minn.St. 629.34 required officers to announce their purpose before breaking in a door to make a warrantless arrest, here the announcement of purpose would have been a "useless gesture" because Pavelka presumably knew their purpose. Further, we stated as follows:

" \* \* \* This relatively recent and expanding phenomenon of opening up one's residence as a place for illegal commercial drug trade, where it would be expected that possibly dangerous drug users and addicts would frequent it and where the 'pusher' himself is often dangerous, surely requires law enforcement officers to move rapidly and with great care in anticipation of danger in performing their necessary duties. Further, it is well-known to law enforcement authorities that drugs can rapidly be destroyed by simply flushing them down a toilet or by other means. Thus, it is incumbent upon the police, having established probable cause, to arrest the perpetrator of such sales and confiscate the remainder of the drugs, in order to be able to establish at trial the fact that this was the defendant who had possessed and sold the drugs." Minn., 250 N.W.2d at 203.

■■■ We believe that the following principles governing the unannounced entry of a dwelling place to execute a search warrant may be extracted from these cases:

First, when police seeking a search warrant have reason to believe that an unannounced entry will be required in order to successfully and safely execute the warrant, they must inform the issuing magistrate of the circumstances which they believe justify the unannounced entry and obtain specific advance authorization for it.

Second, in order to obtain such authority the police must make a strong showing that an announced entry will result in the destruction of evidence or in danger to the officers executing the warrant.

a. In this regard, the officer must do more than simply make a showing that drugs are involved. In fact, we question whether an unannounced entry clause can ever be justified in a warrant to search a dwelling for drugs when there is no indication that the drugs are other than for personal use and where there is no averment of specific facts indicating that an unannounced entry is needed in order to safely and successfully execute the warrant.

b. However, if the affidavit contains a showing of necessity—e. g., a showing that the occupants are prepared to destroy evidence whenever the search warrant is executed or that the dwelling is being used also as an outlet or a warehouse for a drug business—then the request for the unannounced entry clause should be granted.

The third governing principle is that even if police obtain advance judicial authorization for an unannounced entry into a dwelling, the police still should make a threshold reappraisal of the need to execute the warrant in this manner.

The fourth governing principle is that if police have no reason to seek advance authorization or if advance authorization is denied, the police still may make an unannounced entry to execute the warrant if facts arising at the threshold strongly indicate that an unannounced entry is necessary in order to safely or successfully execute the warrant.

■ In the instant case the affidavit did not contain any express statement that defendant was selling marijuana or that he was using his apartment as a place from which to sell it. The affidavit did state that the informant was at the apartment and observed "a large amount" of marijuana. One could arguably infer from this fact that defendant was in the business of selling marijuana because presumably a person with large amounts of a particular drug in his possession does not plan on using it all himself. If the magistrate was justified in concluding from this that defendant was in the business of selling marijuana from his house, that would have been a factor which he could have considered as tending to support the conclusion that an unannounced entry was needed if the officers were to protect themselves. However, our decisions in *Parker* and *Daniels* make it clear that the showing of necessity required should be a strong showing. Looking at the affidavit in its entirety, we are forced to agree with the district court that the police did not make out a sufficient case at the time for an unannounced entry. To conclude otherwise would be to say that in fact there is a blanket rule in narcotics cases authorizing unannounced entries to execute search warrants provided judicial authorization is first obtained.

We disagree, though, with the district court's conclusion that the police did not acquire any additional information at the threshold before they executed the warrant. The facts indicate that the police conducted a short surveillance and observed a number of people enter and leave the apartment. This, combined with the statement in the affidavit that the informant had observed a large amount of marijuana on the premises, sufficiently increased the probability that defendant was selling marijuana from his apartment to justify their belief that a quick unannounced entry was needed to ensure the safety of the officers.

2. The second issue relates to the legality of the authorization in the warrant of a nighttime search.

Minn.St. 626.14 provides:

"A search warrant may be served only in the daytime unless the court or justice of the peace determines on the basis of facts stated in the affidavits that a nighttime search is necessary to prevent the loss, destruction, or removal of the objects of the search. The search warrant shall state that it may be served only in the daytime unless a nighttime search is so authorized."

Although the general rule against nighttime searches is statutory, it may also have a constitutional dimension. Justice Marshall in a dissenting opinion, joined by Justice Douglas and Brennan, in *Gooding v. United States,* 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974), while stating that the constitutional issue was not presented in that case, added that he believed the Constitution required additional justification for a nighttime search of a home over and above the ordinary showing of probable cause.

■ Underlying the Minnesota statutory rule—as well as Justice Marshall's suggested constitutionally based rule—is the belief that a nighttime search of a home involves

a much greater intrusion upon privacy and is presumably more alarming than an ordinary daytime search of a home. See, *State v. Stephenson,* Minn., 245 N.W.2d 621 (1976).

■ What the Minnesota statute seems to require is some showing to the magistrate that the warrant can only be executed successfully in the nighttime. *State v. Van Wert,* 294 Minn. 464, 199 N.W.2d 514 (1972).

■ In the instant case the justification offered by the police in their affidavit was that "it is unknown when the person described herein will be at the premises described herein." The district court concluded that a "bare assertion" such as this was insufficient to justify a nighttime search clause.

It is true that the defendant's presence at home during the execution of the warrant was a legitimate concern of the police in this case because the marijuana would not necessarily be in the apartment when defendant was absent, and further, it was advantageous to the police to confiscate the marijuana when defendant was there in order to be able to establish at trial that it was defendant who was guilty of possessing it. *State v. Clark,* Minn., 250 N.W.2d 199

(1977). However, there was nothing in the affidavit to suggest that the police had any reason to believe that defendant would not be home during daytime hours, only an assertion that the police did not know when he would be home. As the district court stated, this is the kind of assertion that could be made in almost any case. In short, then, we agree with the district court that the police did not make a sufficient showing to justify inclusion of the nighttime search clause.

■ Although we agree with the district court on that point, we disagree with the court's conclusion that suppression of the evidence is therefore required. We would have no difficulty in excluding the evidence if the police had violated the statute and had not sought authorization for the nighttime search. However, here it is clear that the police acted in good faith and that any error committed is attributable to the magistrate, who should have required the police to make a clearer showing of need before granting the nighttime search clause. Under these circumstances, one may question whether the exclusionary rule should apply even if the violation were deemed of constitutional proportions.[1]

---

1. Recently, in *State v. Nolting,* Minn., 254 N.W.2d 340, 345, note 7 (1977), we stated: "The securing of a warrant may tip the scales in doubtful cases. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723, 726 (1964). The reason for this result is the desire not to deter police officers from obtaining warrants.

"Another ground for this result may lie in the characterization of the exclusionary rule as being directed at *police* misconduct. E. g., *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 571 (1974). Little more can be expected of a police officer who gathers evidence, presents it to a magistrate, and receives a warrant. *Stone v. Powell,* 428 U.S. 465, 496, 96 S.Ct. 3037, 3053, 49 L.Ed.2d 1067, 1090 (1976) (Burger, C. J., concurring). If Fourth Amendment rights are violated by the resulting search, the fault lies in large part with the judiciary since refusal to issue the warrant presumably would compel the officer to gather more evidence before a search was conducted. * * * Because judges may disagree about the existence of probable cause, it is difficult to

fault an officer in close cases for not realizing that his investigation has not yet yielded probable cause. *Stone v. Powell,* 428 U.S. 465, 539, 96 S.Ct. 3037, 3073, 49 L.Ed.2d 1067, 1114 (White, J., dissenting). A police officer's reliance is especially justified where * * * a judge of long experience deems the affidavit sufficient. Application of the exclusionary rule in such a context would do little to deter police misconduct. But cf. *United States v. Karathanos,* 531 F.2d 26, 32 (2 Cir. 1976), certiorari denied, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976) (rejecting government suggestion that exclusionary rule should not apply if officers obtain a warrant).

"We note that recently the United States Supreme Court has expressed some disenchantment with the exclusionary rule. Mr. Justice White observed in his dissent in *Stone v. Powell, supra*: 'I feel constrained to say, however, that I would join four or more other Justices in substantially limiting the reach of the exclusionary rule as presently administered under the Fourth Amendment in federal and state criminal trials.

\* \* \* \* \* \*

In any event, we do not believe that the error here was of a constitutional nature. In this respect it is significant that, although the warrant was executed in the nighttime, it was executed at a reasonable hour when most people are still awake. The police knew that defendant had just returned home, he was fully clothed, there was considerable activity in his apartment, and, in fact, defendant's door was partly open. In short, the intrusion was not the kind of nighttime intrusion—with people being roused out of bed and forced to stand by in their night clothes while the police conduct the search—that our statutory rule against nighttime execution of search warrants is primarily designed to prevent. Thus, while there was a technical violation of our statute, the violation was not of a constitutional nature, and therefore even the rule of *Mapp v. Ohio,* see note 1, does not require the exclusion of the evidence seized.

In conclusion, although we hold that the manner in which the police executed the warrant in this case did not violate defendant's Fourth Amendment rights and therefore does not require suppression of the evidence, we emphasize, as we did in the *Daniels* case, that the last word has not been written in this difficult matter of setting limits on the manner in which police may execute search warrants.

Defendant is awarded attorney fees in the amount of $150 pursuant to Rule 29.03, subd. 2(8); Rules of Criminal Procedure.

Reversed and remanded for trial.

WAHL, Justice (dissenting).

I respectfully dissent from the opinion of Mr. Justice Kelly for the reasons stated by the trial court. I would affirm.

" 'The rule has been much criticized and suggestions have been made that it should be wholly abolished, but I would overrule neither *Weeks v. United States* nor *Mapp v. Ohio.* I am nevertheless of the view that the rule should be substantially modified so as to prevent its application in those many circumstances where the evidence at issue was seized by an officer acting in the good-faith belief that his conduct comported with existing law and having reasonable grounds for this belief. These are recurring situations; and recurringly evi-

dence is excluded without any realistic expectation that its exclusion will contribute in the slightest to the purposes of the rule, even though the trial will be seriously affected or the indictment dismissed.' 428 U.S. 537, 96 S.Ct. 3072, 49 L.Ed.2d 1113. Nevertheless, until the United States Supreme Court modifies or abrogates the exclusionary rule, we must, under *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), give it full force and effect in this court."