**In the Matter of the WELFARE OF D.A.G.**

No. C0–91–530.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Granted Nov. 13, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Ann L. Carrott, Douglas County Atty., Allen L. Senstad, Asst. Douglas County Atty., Alexandria, for appellant.

Peter Mellom, Gaffaney, Velde Law Firm, Alexandria, for respondent.

Considered and decided by KLAPHAKE, P.J., and LANSING and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Evidence was suppressed where a tenant who did not accompany the police gave consent to search a residence, police did not knock but went in with guns drawn, and a cotenant was present in the house. The state challenges the suppression of evidence. We affirm.

## FACTS

GGW owned a house in Alexandria, Minnesota, which she rented to her son and two other young men. Her son DAG (dob: 1/12/73) is the defendant in this case.

The following is alleged: at about 2:00 a.m. on August 30, 1990, several acquaintances of these young men were at the house. Two of the guests left to pick up something and returned approximately a half hour later with more than a half pound of marijuana. The guest who had obtained the marijuana, Michael Erickson, proceeded to package the marijuana into small plastic baggies containing about ¼ ounce of marijuana each, intending to sell each package for $40 to $50. One of DAG's cotenants, Thomas Howard, was upset that there was marijuana in the house, but when he complained to DAG, DAG indicated that he was unconcerned.

Howard went to the police where he signed a consent to search the house for the marijuana. Several officers went to the house, drew their weapons and entered the house without knocking or announcing their purpose or authority. They found marijuana in baggies in a black leather jacket in the kitchen and arrested Michael Erickson, owner of the jacket.

In plain view in the living room was a "sawed-off" or "short barreled" shotgun belonging to defendant. Upon discovery of the weapon, DAG was arrested and charged with delinquency and with ownership and/or possession of an illegal weapon. The trial court granted a motion to suppress the evidence on the grounds of illegal search. The state appeals.

## ISSUE

Did the trial court err in determining that the search of DAG's residence was illegal and, therefore, that the "sawed-off"

shotgun was inadmissible as evidence against DAG?

## ANALYSIS

■ a. *Knock and announce.* Common law has long dictated that police knock and announce their authority and purpose before making a forced entry of a private dwelling. *Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958); *see also Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968). This requirement has been embodied in federal statutes regarding search warrants, 18 U.S.C.A. § 3109 (West Supp.1985), and in state statutes regarding arrests with or without warrants. Minn.Stat. §§ 629.33–.34 (1990). The "knock and announce" requirement has been recognized by both the U.S. Supreme Court and the Minnesota Supreme Court as presumptively applying to entries of private dwellings. *See Sabbath,* 391 U.S. at 588, 88 S.Ct. at 1758–59; *State v. Linder,* 291 Minn. 217, 218–19, 190 N.W.2d 91, 92–93 (1971). There are, however, exceptions for exigent circumstances. *Sabbath,* 391 U.S. at 591 n. 8, 88 S.Ct. at 1759 n. 8; *Linder,* 291 Minn. at 219, 190 N.W.2d at 93 (both citing *Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726 (1963)).

The state and federal requirements have been summarized by the Minnesota Supreme Court as follows:

> Unreasonable searches and seizures violate state and Federal constitutional standards. U.S. Const. Amend. IV; Minn. Const. art. 1, § 10. Under normal conditions, a warrant-bearing officer is required to identify his authority and his purpose. Exigent circumstances may render an otherwise unreasonable search, reasonable. The requirement that an officer identify his purpose is not contained in either the State or Federal Constitution. Such identification is required only when the failure to do so would render the search unreasonable.

*Linder,* 291 Minn. at 219, 190 N.W.2d at 93.

The supreme court has indicated that if there is a showing that a dwelling is being used "as an outlet * * * for a drug business" or that the suspects are prepared to destroy evidence, a "no-knock" warrant should be granted. *State v. Lien,* 265 N.W.2d 833, 839 (Minn.1978). Nevertheless, the supreme court has clearly stated that there is not a blanket exception for drug cases. *Id.* at 837.

■ The facts in *Lien* are quite similar to those in this case. In *Lien,* there was no express statement that the suspect was selling marijuana from his apartment, but, merely, a statement that the informant had observed " 'a large amount' " of marijuana and the presumption that the suspect planned to sell some of it. *Id.* at 839. Here, Howard indicated that Erickson was a "known drug dealer," that he had a large amount of marijuana, and that he had packaged it in a manner consistent with resale. In *Lien,* the court said if there was good reason to suspect marijuana was being sold, that would be one factor tending to support the need for an unannounced entry. *Lien,* 265 N.W.2d at 839. The court said, however, that "the showing of necessity required should be a strong showing" and concluded that, without more than the facts presented, there was an insufficient showing of need for an unannounced entry. *Id.*

This court has stated that the existence of exigent circumstances "must be based on fact" and

> "good faith belief that compliance [with the knock and announce rule] would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, * * * cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence."

*State v. Whelan,* 350 N.W.2d 414, 417 (Minn.App.1984) (quoting *People v. Rosales,* 68 Cal.2d 299, 66 Cal.Rptr. 1, 437 P.2d 489 (1968)).

In this case, there was no prior evidence that the suspect, or anyone in the house, even possessed a weapon, let alone that

they were likely to use it against the police. We hold that these facts do not meet the exigent circumstances test for excusing compliance with the "knock and announce" requirements of the U.S. Supreme Court and the Minnesota Supreme Court. When this requirement is not met, the search is "unreasonable" and exclusion of evidence is proper. *Whelan*, 350 N.W.2d at 417; *see generally Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963) ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a result of an unlawful invasion.").

■ *b. Consent.* A warrantless search is unreasonable per se unless it falls within one of the exceptions to the warrant rule. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent to search is an exception to the requirement of a warrant. 412 U.S. at 219, 93 S.Ct. at 2043–44. Consent may be granted by a third party who has "common authority over or other sufficient relationship to the premises" involved. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The necessary common authority is supplied by

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. The Minnesota Supreme Court adopted this approach in *State v. Hanley*, 363 N.W.2d 735, 738–39 (1985).

■ Here, Howard initiated contact with the police and gave them his signed consent to search the premises for the marijuana which he had seen Erickson bring into the house. Howard had only lived in the house a week or so and, apparently, had not yet paid any rent, but he affirmatively stated that he was a renter, along with two others whom he named, and that he had a "verbal contract" with GGW to pay her $150 per month. DAG later admitted that Howard was a cotenant, so authority to consent is not an issue.

*c. Competing rights to consent.* Howard, although consenting to entry, did not accompany the officers to the house; but his cotenant DAG was on the premises when the officers arrived. Thus, the issue of competing rights to consent arises. Specifically, could Howard's consent to search override DAG's right, as a cotenant on the premises, to deny consent to the search? This is an issue of first impression in Minnesota.

■ In *Tompkins v. Superior Court of San Francisco*, 59 Cal.2d 65, 69, 27 Cal. Rptr. 889, 892, 378 P.2d 113, 116 (1963), Justice Traynor makes what to us is a compelling analysis, concluding that:

> [O]ne joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where * * * no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter.

Numerous California cases have followed this rule and it has been followed in Florida, Maryland, and Washington. *Silva v. State*, 344 So.2d 559, 562–63 (Fla.1977); *Dorsey v. State*, 2 Md.App. 40, 43–44, 232 A.2d 900, 902 (1967); *State v. Leach*, 113 Wash.2d 735, 744, 782 P.2d 1035, 1040 (1989).

The rationale for the *Tompkins* rule was well explained in *Silva*, where the Florida court said:

> [T]he person whose property is the object of a search should have controlling authority to refuse consent. * * * Though a joint occupant should have authority to consent to a search of jointly held premises if the other party is unavailable, a present, objecting party should not have his constitutional rights ignored because

of a leasehold or other property interest shared with another.

344 So.2d at 562.

We believe that where there is a conflict among cotenants as to consent, the constitutional rights of a present, objecting tenant cannot be limited by an absent cotenant. We, therefore, hold that under both the United States Constitution and the Minnesota Constitution, a cotenant on the premises has a right to object to a warrantless search of the premises, even if a cotenant has earlier consented, and if the cotenant on the premises objects, the warrantless search is illegal. U.S. Const., amend. IV; Minn. Const. art. I, § 10.[1]

 In this case DAG did not have a reasonable opportunity to object to the entry because the police entered unannounced and with weapons drawn. Consent cannot be inferred from a lack of objection in these circumstances because "[w]here there is coercion there cannot be consent." *Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). Further, acquiescence in the face of claimed authority is inadequate to show consent, *id.* at 549–50, 88 S.Ct. at 1792, as is submission to "a show of force." *State v. Howard*, 373 N.W.2d 596, 599 (Minn. 1985).

We hold that the search was illegal. We withhold comment, however, on what the result would be when both consenting and nonconsenting tenants are present.

 d. *Plain view.* Whether evidence found in plain view is admissible depends upon whether the initial search was valid. *State v. Hoven*, 269 N.W.2d 849, 853 (1978).

What the "plain view" cases have in common is that the police officer * * * had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement * * * some other legitimate rea-

son for being present unconnected with a search directed against the accused.

*Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *see also Horton v. California*, —— U.S. ——, ——, 110 S.Ct. 2301, 2308–09, 110 L.Ed.2d 112 (1990) (limiting need for "inadvertence" in discovery of evidence in otherwise lawful search). Thus, although the "sawed-off" shotgun was found in plain view in a common area, because the police were not lawfully on the premises, the evidence is inadmissible.

 e. *Confession.*

[O]nce a primary illegality is established, any evidence "come at by exploitation of that illegality" may not be used against the defendant, including any evidence uncovered by leads obtained during an illegal search.

*State v. Jannetta*, 355 N.W.2d 189, 193 (Minn.App.1984) (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417), *pet. for rev. denied* (Minn. Jan. 14, 1985). Because the police entry which led to discovery of DAG's "sawed-off" shotgun was illegal, DAG's later confession must also be suppressed.

## DECISION

We hold that DAG, as a tenant on the premises, had a right to object to a warrantless search, even though consent to search had been given by a cotenant, and that because there were no exigent circumstances, the police officers' unannounced entry was unreasonable, making the search illegal. The evidence obtained as a result of that search must be suppressed.

Affirmed.

---

1. We adopt this view, even though New York and Oregon have ruled that the consent of one cotenant is binding on another. *People v. Cosme*, 48 N.Y.2d 286, 292–93, 422 N.Y.S.2d 652,

655–56, 397 N.E.2d 1319, 1323 (1979); *State v. Frame*, 45 Or.App. 723, 730, 609 P.2d 830, 833 (1980), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1486, 67 L.Ed.2d 617 (1981).