STATE of Minnesota, Respondent,

v.

Todd Allen JOHNSON, Appellant.

No. A04–176.

Court of Appeals of Minnesota.

Nov. 23, 2004.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant

County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge, ROBERT H. SCHUMACHER, Judge, and HUSPENI, Judge.*

## O P I N I O N

HALBROOKS, Judge.

Appellant Todd Allen Johnson challenges his conviction and sentence for criminal vehicular homicide, arguing that (1) the district court erred in denying his pretrial motion to suppress evidence and (2) the district court erred in imposing an upward durational departure at sentencing after denying appellant's request to withdraw his guilty plea. We affirm the district court's denial of appellant's motion, but reverse the sentence and remand for reconsideration consistent with *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

## FACTS

On the evening of May 25, 2003, at approximately 10:20 p.m., two Minneapolis police officers responded to a report of a motor vehicle accident at the intersection of Fremont Avenue and 34th Street. At the scene, the officers discovered that a blue Grand Marquis automobile had struck a taxi cab, killing the cab's driver and injuring its five passengers. The police learned from witnesses that the driver of the Grand Marquis had left the scene on foot. Based on their initial investigation, the officers subsequently concluded that the Grand Marquis had approached the intersection at a high rate of speed, run a stop sign, and collided with the taxi.

A woman at the scene told the officers that she had observed a Grand Marquis going approximately 60 miles per hour past her home on 34th Street toward Fremont Avenue just before hearing a crash; she then ran to the accident site and observed the driver of the Grand Marquis get out of the vehicle, holding his chest. When she approached the driver to urge him to stay at the scene, she noticed that he "reeked" of alcohol. The driver then returned to the vehicle to retrieve a bottle and walked away. A second individual who lives near the intersection told the police that she heard the crash, went to the scene, and saw the driver of the Grand Marquis exit the vehicle. As the driver approached the woman, she saw that he was holding his chest and "looked hurt." The woman told the man that someone had called 911, and the man replied, "Are they on their way? I don't want no part of 'em. I don't want no police." A third woman saw the Grand Marquis approaching the intersection, also heard the crash, went to the accident scene, and saw the driver, who appeared "drunk."

Insurance papers discovered inside the Grand Marquis by the officers indicated that the vehicle was owned and insured by appellant and that appellant resided on Dupont Avenue in Minneapolis. The officers then drove to the address indicated on the insurance papers.

The Dupont Avenue residence is a duplex with an upstairs unit, a downstairs unit, and a common entryway; appellant lived in the downstairs unit. The police banged on the outside door leading to the

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

common area and on several windows of the downstairs unit and loudly announced their presence, but received no response. They also tried and failed to contact the residents by telephone. A neighbor alerted by the noise approached and told the police that she had seen appellant leaving his residence earlier that evening driving a car similar to the one police told her had been involved in the accident at the intersection of Fremont Avenue and 34th Street. The neighbor also stated that a light inside appellant's unit had just been turned off and that she believed the unit to be occupied at that moment. The police then kicked in the outside door and entered the common area.

Once inside the common area, the officers banged on the door of the downstairs unit and identified themselves as police. When a woman opened the door, the officers told her that they believed that appellant had been involved in a serious accident. The woman said that appellant was sleeping. Three officers entered the unit. While one officer spoke with the woman in the living room, the other officers located appellant in the bedroom. Police also brought two of the witnesses from the accident scene to the Dupont Avenue residence. Both witnesses identified appellant as the driver of the Grand Marquis. Police then transported appellant to the Hennepin County Medical Center, where a blood test revealed that his alcohol concentration was .13.

The state charged appellant with one count of criminal vehicular homicide in violation of Minn.Stat. § 609.21, subd. 1(7) (2002). He pleaded not guilty and filed a motion to suppress all evidence obtained as the result of the warrantless entry of his residence. The district court denied the motion, reasoning that the warrantless entry was justified both as a medical emergency and by probable cause and exigent circumstances (the need to preserve alcohol-concentration evidence).

Appellant waived his right to a jury trial and submitted the matter to the district court on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980). The parties agreed that appellant would receive the "bottom of the box" sentence, that is, the lowest presumptive guidelines sentence based upon appellant's criminal-history score. In appellant's case, the "bottom of the box" was 98 months. The district court found appellant guilty and sentenced him to 120 months in prison, reasoning that an upward departure was warranted by appellant's failure to abide by the terms of his conditional release and the fact that the victims of the accident included children under the age of six and a pregnant woman. This appeal follows.

## ISSUES

I. Did the district court err in denying appellant's motion to suppress the evidence obtained as a result of the warrantless search of his home?

II. Did the district court violate appellant's right to a jury trial by imposing an upward durational departure based on judicial findings?

## ANALYSIS

### I.

Appellant argues that the district court erred by denying his pretrial motion to suppress the evidence seized following the warrantless entry of his residence. We review pretrial motions to suppress evidence by independently considering the facts to determine, as a matter of law, whether the district court erred in its decision. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999).

A warrantless search of a person's home is prohibited by the Fourth Amendment to the United States Constitution and by article I of the Minnesota Constitution. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are per se unreasonable unless permitted by one of a limited number of exceptions, including the presence of probable cause that an individual has committed a crime and exigent circumstances related to its investigation. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Othoudt,* 482 N.W.2d 218, 223 (Minn.1992). The state bears the burden of showing that at least one of the exceptions applies in order to avoid suppression of the evidence acquired from the warrantless search. *State v. Metz,* 422 N.W.2d 754, 756 (Minn.App.1988).

Here, the district court concluded that the officers' warrantless entry of appellant's residence was justified by probable cause to believe that he had committed criminal vehicular operation involving alcohol and the exigent need to ascertain appellant's alcohol concentration before evidence of his intoxication began to diminish. In order to establish probable cause, the police must show that they "reasonably could have believed that a crime has been committed by the person to be arrested." *State v. Paul,* 548 N.W.2d 260, 264 (Minn. 1996) (quotation omitted). "The probable-cause standard is an objective one that considers the totality of the circumstances." *State v. Olson,* 634 N.W.2d 224, 228 (Minn.App.2001), *review denied* (Minn. Dec. 11, 2001). When more than one officer is involved in an investigation, the collective knowledge of the police force is imputed to the arresting officer for the purpose of determining if sufficient probable cause exists for an arrest. *State v. Riley,* 568 N.W.2d 518, 523 (Minn.1997).

We "independently review[ ] the facts to determine the reasonableness of the conduct of police" concerning the existence of probable cause. *Id.*

The probable cause needed for police to conduct a warrantless nonconsensual blood test during an investigation of a person for criminal vehicular operation resulting in death is "probable cause to believe that the crime of criminal negligence has been committed and probable cause to believe not that the defendant is intoxicated but that administration of the [blood] test will result in the discovery of evidence that will aid in the prosecution of that crime." *State v. Speak,* 339 N.W.2d 741, 745 (Minn.1983). Here, witnesses told police that they had seen an individual who appeared intoxicated and smelled of alcohol exit a vehicle that had been involved in a fatal accident and leave on foot after stating that he didn't want to encounter the police. The police discovered at the scene that the Grand Marquis belonged to appellant and reasonably inferred that appellant had been driving the car at the time of the accident. *Cf. State v. Pike,* 551 N.W.2d 919, 922 (Minn.1996) (holding that "[w]hen an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator"). When the officers arrived at appellant's house, they were unable to make contact with the individual(s) they believed to be inside; they were also told by a neighbor that appellant had left home earlier that evening driving a vehicle similar to the Grand Marquis. On this record, we conclude that the police had probable cause to believe that appellant had committed criminal vehicular operation involving alcohol.

Exigent circumstances can be established either by a single factor or "totality of the circumstances" analysis. *State v. Gray,* 456 N.W.2d 251, 256 (Minn.

1990). We evaluate the facts found by the district court to determine, as a matter of law, whether exigent circumstances existed. *Id.* One single-factor exigent circumstance—and the one referenced by the district court here—is the "imminent destruction of evidence." *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990).

Appellant argues that the police did not need to preserve evidence of his alcohol concentration because he was ultimately only charged with leaving the scene of a fatal accident and not with any alcohol-related vehicular offense. But the ultimate charge is not relevant to a determination of whether the police objectively believed that evidence would be lost, and the investigation compromised, unless they determined appellant's alcohol concentration within a reasonable time following the accident. The possible destruction of evidence created an exigent circumstance that justified the warrantless entry of appellant's residence.

A totality-of-the-circumstances analysis should consider the factors set forth in *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir.1970), which include

> (a) whether a grave or violent offense is involved; (b) whether the suspect is reasonably believed to be armed; (c) whether there is strong probable cause connecting the suspect to the offense; (d) whether police have strong reason to believe the suspect is on the premises; (e) whether it is likely the suspect will escape if not swiftly apprehended; and (f) whether peaceable entry was made.

*State v. Hummel*, 483 N.W.2d 68, 72–73 (Minn.1992) (quotation omitted). Although the police did not believe appellant to be armed at the time they entered his home, the other *Dorman* factors are satisfied here. It is true that the entry was not peaceable, but the police made a forcible entry only after trying repeatedly and at length to enter the residence peaceably. The warrantless entry of appellant's residence was justified by the exigent-circumstances exception to the warrant requirement.

Because we conclude that the warrantless search was justified by probable cause and exigent circumstances, we do not reach the issue of whether the search was also valid pursuant to the doctrine of medical emergency.

## II.

Appellant challenges his sentence, arguing that (1) the district court's refusal to accept the "bottom of the box" sentencing agreement entitled him to withdraw his jury-trial waiver and (2) the upward durational departure imposed on him based on the district court's findings of aggravating factors violates the Supreme Court's holding in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

■ Appellant contends that the district court's failure to abide by the parties' sentencing agreement entitled him to withdraw his consent to a *Lothenbach* stipulated-facts trial for the same reasons that a defendant must be allowed to withdraw a guilty plea where the district court violated the plea agreement at sentencing. *See State v. Tyska*, 448 N.W.2d 546, 549 (Minn. App.1989) (holding that a defendant has a right to withdraw his guilty plea if the plea agreement is violated by imposition of a sentence other than that promised in the agreement). But a *Lothenbach* proceeding does not involve a guilty plea. *State v. Verschelde*, 595 N.W.2d 192, 194–95 (Minn. 1999). "A true *Lothenbach* stipulation does not involve a concession of guilt, and is intended only to preserve the defendant's right of appeal while avoiding an unnecessary jury trial." *State v. Halseth*,

653 N.W.2d 782, 786 n. 2 (Minn.App.2002). We therefore disagree with appellant's contention that an agreement to a stipulated-facts trial is "the functional equivalent of a guilty plea" and observe that pursuant to Minn. R.Crim. P. 26.01, subd. 1(3), appellant was entitled to withdraw his waiver of a jury trial "at any time before the commencement of the trial." Because appellant did not attempt to withdraw his *Lothenbach* agreement until after the trial, he has waived the right to challenge the agreement.

▮▮▮▮▮ As to the departure, a decision to depart from the sentencing guidelines will not be reversed absent a clear abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). But appellant's challenge to the sentence imposed on him under the sentencing guidelines raises a constitutional issue: whether, under the Sixth Amendment, as interpreted in *Blakely*, appellant was entitled to a jury determination, based on proof beyond a reasonable doubt, of the presence of these or any other aggravating factors used to increase his sentence. In reviewing a constitutional challenge, this court applies a de novo standard of review. *State v. Wright*, 588 N.W.2d 166, 168 (Minn.App.1998).

The district court sentenced appellant to an executed sentence of 120 months, which represented an upward durational departure from the presumptive executed sentence of 98 months. To support the departure, the court cited appellant's failure to abide by the terms of his conditional release and the fact that the victims of the accident included children under the age of six and a pregnant woman. *See* Minn. Sent. Guidelines II.D.2.b. After this appeal was briefed, the United States Supreme Court issued *Blakely*, which applied the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Blakely*, 124 S.Ct. at 2536. Under *Blakely*, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 2537 (emphasis omitted). *Blakely* consequently held that under Washington's determinate sentencing scheme, any upward sentencing departures based on the judge's findings, rather than those of the jury, are invalid under the Sixth Amendment. *Id.* at 2538.

After *Blakely* issued, we granted the parties leave to submit supplemental briefs on the question of whether that case applies to durational sentencing departures imposed in the context of a *Lothenbach* stipulated-facts trial. We now hold that it does.

This court has recently ruled that in the context of a sentence imposed pursuant to a guilty plea, *Blakely* requires that the reasons relied upon by a district court as bases for departing durationally from the guidelines must be based solely on facts admitted by the defendant in the plea. *State v. Conger*, 687 N.W.2d 639, 644–45 (Minn.App.2004). We have also ruled that *Blakely* applies to durational sentencing departures imposed following a jury trial resulting in a guilty verdict, prohibiting the judge from imposing a departure on the basis of facts not reflected in the jury verdict or admitted by the defendant. *See State v. Saue*, 688 N.W.2d 337, 345, 2004 WL 2453211, at *—— (Minn.App. Nov. 2, 2004).

The "*Lothenbach* procedure calls 'for the defendant to enter a plea of not guilty, waive his right to a jury trial, and then stipulate to the prosecution's case.'" *Verschelde*, 595 N.W.2d at 195 (quoting *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn.

**254**

1980)). As such, the procedure is substantively distinct from a guilty plea, in which a factual basis is established, or a jury trial, in which the jury determines guilt or innocence based on contested evidence. But the critical consideration in determining the applicability of *Blakely* to a *Lothenbach* procedure is identical to that presented by either a guilty plea or a jury trial: whether any sentencing facts "essential to lawful imposition of the [sentence]," *Blakely*, —— U.S. at ——, 124 S.Ct. at 2540, were decided by the judge and whether the procedure preserved the defendant's fundamental right, under *Blakely*, "to have all sentencing facts decided by the jury." *Saue*, 688 N.W.2d at 344. The *Lothenbach* procedure requires a waiver of the right to a jury trial on the elements of the offense. Implicit in that waiver, however, is not a waiver of the right of a jury to determine aggravating factors relating to sentencing.

This matter presents a typical *Lothenbach* procedure in that the defendant, who stipulated to the state's case, did not also stipulate to the additional facts found by the court at sentencing in support of the sentencing departure. The departure imposed in this case therefore involves the judicial fact-finding role prohibited by *Blakely*. We conclude that the imposition of an upward durational departure based on judicial findings following a *Lothenbach* trial violates the defendant's Sixth Amendment right to a jury trial.

The durational departure is therefore reversed, and this matter is remanded to the district court for resentencing in a manner not inconsistent with this opinion in such proceedings as the district court deems appropriate.

**DECISION**

The district court properly concluded that the warrantless entry of appellant's residence was justified by exigent circumstances. The district court's imposition of an upward durational departure based on judicial findings violated appellant's Sixth Amendment right to trial by jury. We remand for resentencing.

**Affirmed in part, reversed in part, and remanded.**