**STATE of Minnesota, Respondent,**

v.

**Scott Allen AMUNDSON, Appellant.**

**No. A04–2072.**

Court of Appeals of Minnesota.

April 11, 2006.

Mike Hatch, Attorney General, Mary R. McKinley, Assistant Attorney General, St. Paul, MN; and Gordon L. Moore, III, Nobles County Attorney, Worthington, MN, for respondent.

Dennis J. Rutgers, Rushford, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and RANDALL, Judge.

## OPINION

RANDALL, Judge.

In this appeal from convictions and a sentence for first- and fifth-degree con-

trolled substance crime, appellant argues that the warrant authorizing the search of his house was not supported by probable cause and that the search-warrant application did not contain sufficient information supporting the no-knock and nighttime provisions of the warrant. Appellant also argues that the enhancement of his sentence under the firearm-enhancement statute violated his Sixth Amendment rights under *Blakely*. We conclude that the information supporting the no-knock and nighttime provisions in the search warrant was illegally obtained. Reversed and remanded.

## FACTS

On September 17, 2003, while investigating a car crash, a Nobles County sheriff and a state trooper went to appellant Scott Amundson's house in search of an injured motorist they believed to have been dropped off there. The police announced their presence and knocked on the door. No one answered, and the door was locked, apparently from the inside. Because they believed that the injured motorist might be inside the house but unable to answer the door, the police forced the door open and entered the house. Police observed several firearms and open boxes of ammunition. They did not find the injured motorist and left the house. While the police were outside, Amundson exited the house and met the officers in the yard. He told the police that the injured motorist was not there, but the police still handcuffed Amundson and went back inside the house. Amundson did not resist the police or act in a threatening manner. The police later found the injured motorist at a house on nearby acreage.

One week later, on September 24, 2003, Amundson's estranged wife, M.A., reported to the police that a rock had been thrown though her kitchen window. M.A.

told police that she and Amundson had been separated for about one year, that during that year Amundson had harassed her on multiple occasions, that she thought that Amundson had thrown the rock, and that two days before the rock incident, Amundson had left several threatening messages on her voicemail. The next day, M.A. filed a petition for an order for protection against Amundson. A Nobles County deputy attempted to serve Amundson with the order that evening. Amundson was not home, but the deputy located him at a house nearby and served him with the order for protection. Again, at no time did Amundson present danger to the deputy.

On September 27, 2003, a Nobles County sheriff stopped a vehicle and learned from the driver and passenger that Amundson believed that he was in trouble with the law. The driver said that they were going to Amundson's house to pick up Amundson's dog.

Later that day, a Nobles County deputy applied for a warrant to search Amundson's house and arrest Amundson on charges of terroristic threats and felony pattern of harassment. The application stated that police were looking for firearms, destructive devices, and weapons; cell phones, cell phone records, and house phone records; and documents showing that Amundson owned the house. The application requested a no-knock and a nighttime warrant for officer safety.

The district court issued the requested warrant, and police executed the warrant at 1:30 a.m. without announcing their presence. While executing the warrant, officers found evidence of a methamphetamine lab. Amundson was charged with first-degree controlled substance crime, in violation of Minn.Stat. § 152.021, subd. 2a (2002); conspiracy, in violation of Minn. Stat. § 152.096, subd. 1 (2002); fifth-de-

gree controlled substance crime, in violation of Minn.Stat. § 152.025, subd. 2(1) (2002); and possession of a small amount of marijuana, in violation of Minn.Stat. § 152.027, subd. 4(a) (2002). After the district court denied his motion to suppress the evidence seized in the search, Amundson agreed to waive his right to a jury trial and submit the case on stipulated facts pursuant to *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980). In consideration for his waiver, the state dismissed the conspiracy and possession-of-a-small-amount-of-marijuana charges.

The district court found Amundson guilty of first- and fifth-degree controlled substance crime. The presumptive sentence for both of these convictions is 13 months stayed. Because the district court found that Amundson was in possession of firearms when he committed the offenses, the district court applied the firearm-enhancement statute and imposed the mandatory minimum 36–month sentence. Amundson's appeal from his convictions and his sentence follows.

## ISSUES

1. Did the district court err by concluding that search-warrant application provided sufficient information supporting the no-knock, nighttime search warrant?

2. Does appellant's sentence violated his Sixth Amendment rights under *Blakely?*

## ANALYSIS

### I.

 Amundson first argues that the district court erred by denying his motion to suppress the evidence obtained during the September 29, 2004 search. He argues that there was no probable cause to issue the search warrant and that the no-knock and nighttime provisions were not supported by sufficient or legally obtained information.

 The United States and Minnesota constitutions provide that no warrant shall issue without a showing of probable cause. U.S. Const. Amend. IV; Minn. Const. art. I, § 10. Generally, a search is lawful only if it is executed under a valid search warrant issued by a neutral and detached magistrate upon a finding of probable cause. Minn.Stat. § 626.08 (2002); *State v. Harris,* 589 N.W.2d 782, 787 (Minn.1999). To determine whether probable cause exists, the issuing magistrate must make a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

 We review a search-warrant application to determine whether the issuing magistrate had a "substantial basis" to conclude that probable cause exists. *State v. Zanter,* 535 N.W.2d 624, 633 (Minn.1995) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332). But we will not review each component of the search-warrant application and affidavit in isolation but must determine the sufficiency of the application from its totality. *Wiley,* 366 N.W.2d at 268. A magistrate has a substantial basis when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotation omitted). We give great deference to the issuing magistrate's probable-cause determination. *State v. Rochefort,* 631 N.W.2d 802, 804 (Minn.2001).

Here, the search-warrant application provides a substantial basis for the issuing magistrate to conclude that probable cause

exists. It describes the September 24 incident and contains excerpts from the messages left on M.A.'s voicemail in which Amundson threatened to hurt M.A. The search-warrant application lists the items believed to be at Amundson's house and explains their connection to terroristic-threat and felony-pattern-of-harassments charges. We conclude that the search-warrant application, when viewed in its totality, provided a reasonable basis for the issuing magistrate to conclude that probable cause exists.

 The search warrant provisions authorizing a no-knock and a nighttime search of Amundson's house is the issue. We independently determine whether evidence obtained during a search conducted with a no-knock warrant should be suppressed. *State v. Wasson*, 615 N.W.2d 316, 320 (Minn.2000). When reviewing a determination that an unannounced entry is warranted, the standard of review is reasonable suspicion, not probable cause. *Id.* Although the United States Supreme Court has stated that this showing "is not high," *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997), a request for a no-knock provision must be based on more than an unarticulated hunch. *Wasson*, 615 N.W.2d at 320. The application "must point to something that objectively supports the suspicion at issue." *Id.* Boilerplate language that an announced entry would be dangerous is insufficient. *Id.* Failure to supply the necessary supportive facts for a no-knock provision will nullify the search warrant. *Garza v. State*, 632 N.W.2d 633, 638 (Minn.2001).

 Requests for nighttime search warrants require similar support. *State v. Lien*, 265 N.W.2d 833, 840 (Minn.1978). Minnesota law requires that search warrants must be executed between "7:00 a.m. and 8:00 p.m. unless the court determines

on the basis of the facts stated in the affidavits that a nighttime search outside those hours is necessary ·to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public." Minn.Stat. § 626.14 (2002). Nighttime searches are discouraged because they generally involve "a much greater intrusion upon privacy and [are] presumably more alarming than an ordinary daytime search of a home." *Lien*, 265 N.W.2d at 839–40. Section 626.14 requires that the application demonstrate by more than "bare assertions" that the warrant can only be executed successfully in the nighttime. *Id.* at 840.

The search-warrant application here cited boilerplate officer safety as the reason for both the no-knock and nighttime provisions. The stated concern for officer safety was based on the presence of firearms at Amundson's house. The information regarding the presence of firearms was obtained from the warrantless entry of the house on September 17, 2003. Amundson argues that this information was illegally obtained and improperly considered by the issuing magistrate. The state argues that the September 17 warrantless entry was legal under the emergency exception to the warrant requirement.

 Under the emergency exception to the warrant requirement, police may make a warrantless entry and search a home when they reasonably believe that a person within is in need of immediate aid. *State v. Halla–Poe*, 468 N.W.2d 570, 572 (Minn.App.1991) (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), and *State v. Terrell*, 283 N.W.2d 529, 532 (Minn.1979)). The officers that entered Amundson's house were investigating a car crash and had information that a wounded motorist was there. The state argues that the police were concerned that the motorist

might not be able to answer the door because of his injuries and that a warrantless entry was therefore required.

■ The state's argument is dubious. We cannot think of a reason why, if the injured motorist was present at Amundson's house, the door would be locked. Presumably, the injured motorist or Amundson would have called for the appropriate help and waited. If the injured motorist was not well enough to drive, presumably he would have had Amundson drive him to medical help or call another friend. Someone coming into someone else's house injured does not normally think, "Oops, I'd better lock the door." It is worthy of note that the police do not claim that the "injured motorist" was suspected of being a fleeing felon and that they were in "hot pursuit." If that were the record, that would provide a legitimate reason for their entry and explain the door locked from the inside. We do not have those facts. The state's reliance on the emergency exception to the warrant requirement is pure speculation. We conclude the information regarding the presence of firearms at Amundson's house was not legally obtained and thus not available for consideration in the search-warrant application.

Moreover, the affidavit indicates that police encountered Amundson twice in the days prior to executing the search warrant. The first encounter happened at Amundson's house after the warrantless entry. A second encounter occurred a week later, after the criminal conduct directed toward his estranged wife. On that day, a deputy, with full knowledge of Amundson's alleged violent conduct, went to his home during the day to attempt service of the order for protection. Although Amundson was not home, the deputy found him nearby and served the order without incident. Neither encounter in-

volved any violence on Amundson's part or compromise to officer safety. It is disingenuous to argue that officer safety was a serious concern necessitating no-knock and nighttime provisions.

In light of the recent peaceful encounters with Amundson and without the information regarding the presence of firearms, the search-warrant application has no particularized showing of dangerousness. The application fails to point to something that objectively supports concern for officer safety. We find the no-knock and nighttime provisions in the search warrant are invalid. The search executed on that warrant was unauthorized and the evidence seized must be suppressed.

## II.

■ Amundson also argues that his sentence violates his Sixth Amendment rights under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the district court applied the firearm-enhancement statute and imposed the mandatory minimum sentence of 36 months. Because we reverse Amundson's convictions, we need not reach the merits of this issue. But we note that *Blakely* applies to *Lothenbach* trials and that a *Lothenbach* stipulation does not waive the right to a jury trial on aggravating factors that might be used for sentencing. *State v. Johnson,* 689 N.W.2d 247 253–54 (Minn.App.2004), *review denied* (Minn. Jan. 20, 2005). Because the firearm-enhancement statute "authorizes the district court to make an upward durational departure upon finding a sentencing factor without the aid of a jury or admission by the defendant," any sentence enhanced under that statute based on judicial findings would be unconstitutional. *See State v. Barker,* 705 N.W.2d 768, 773 (Minn. 2005).

## DECISION

Because the information supporting the no-knock and nighttime provisions in the search warrant was illegally obtained, the search was unauthorized and evidence seized in Amundson's house must be suppressed. The state can, if they wish, attempt to recharge Amundson without the offending evidence.

**Reversed and remanded.**

TOUSSAINT, Chief Judge (dissenting).

I respectfully dissent. When reviewing the sufficiency of a search-warrant application, we use a totality-of-the-circumstances test. *State v. Albrecht,* 465 N.W.2d 107, 108–09 (Minn.App.1991). "[C]ourts must be careful not to review each component of the affidavit in isolation." *Id.* at 109. And although we review de novo a district court's decision to admit evidence over a defendant's motion to suppress, we generally give great deference to the issuing magistrate's decision to include no-knock and nighttime provisions in a search warrant. *State v. Martinez,* 579 N.W.2d 144, 146 (Minn.App.1998), *review denied* (Minn. July 16, 1998). Given the totality of the circumstances and the presence of firearms, I conclude that the search-warrant application sufficiently supports the request for no-knock and nighttime provisions. I would affirm the district court's denial of Amundson's motion to suppress.