*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0646**

Michael Eugene Kraus, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant

**Filed November 3, 2014
Reversed
Worke, Judge
Dissenting, Cleary, Chief Judge**

Dakota County District Court
File No. 19AV-CV-13-1932

David Risk, Halberg Criminal Defense, Bloomington, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

The commissioner of public safety challenges the district court's order rescinding the revocation of respondent's driver's license. Because the totality of the circumstances demonstrates that respondent consented to the chemical test, we reverse.

**FACTS**

On June 22, 2013, at approximately 1:02 a.m., Officer Adam Stier stopped respondent Michael Eugene Kraus's vehicle for a traffic or equipment violation. Kraus exhibited indicia of impairment prompting Officer Stier to conduct a driving-while-intoxicated (DWI) investigation.

Officer Stier arrested Kraus for DWI and transported him to the police department. The officer twice read the Minnesota Implied Consent Advisory to Kraus. Kraus indicated that he understood the advisory and wished to consult with an attorney. After consulting with an attorney, Kraus told the officer that he was ready to proceed with the process.

Officer Stier asked Kraus if he would take a breath test. Kraus replied: "I guess I will take your test, but I am not consenting." The officer stated: "Duly noted," and interpreted Kraus's statement to mean that he "would take the test"; based on the officer's experience, Kraus's statement was based on advice from an attorney. Kraus then willingly walked into the breath-testing room and provided a sample. Officer Stier did not use any force or threats against Kraus, although, as part of the implied-consent advisory, the officer had informed Kraus that test refusal is a crime. Kraus's breath test revealed an alcohol concentration of .12.

Appellant commissioner of public safety subsequently revoked Kraus's driver's license. At an implied-consent hearing, Kraus challenged the constitutionality of the breath test. Kraus testified that he had never before been arrested for DWI. Kraus stated that his attorney told Kraus that refusing a test constituted a greater crime than a DWI

charge. Kraus's attorney told him that he "should take the test," but they discussed Kraus stating: "I will take your test, but I'm not consenting." Kraus agreed that the officer "didn't use any force or threats against" him and that he "freely and voluntarily [took] a test" because he had no alternative.

The district court rescinded the revocation of Kraus's driver's license, concluding that, under the totality of the circumstances, Kraus did not knowingly and voluntarily consent to the search. The district court found that this was Kraus's first DWI arrest, Kraus believed that refusal would result in a higher charge than a DWI charge, and he told the officer that he was submitting to the test, but not consenting. The commissioner's appeal followed.

## DECISION

The commissioner argues that the district court erred by concluding that the commissioner failed to establish that Kraus knowingly and voluntarily consented to the breath test and waived the warrant requirement under the Fourth Amendment.

The United States and Minnesota Constitutions prohibit unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn. App. 2008). Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The commissioner bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

3

One exception to the warrant requirement is consent. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

> For a search to fall under the consent exception, the [commissioner] must show by a preponderance of the evidence that the [driver] freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances. Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority.

*Id.* at 568-69 (quotation and citations omitted). We review the district court's finding of whether consent was voluntary under the clearly erroneous standard. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

The court in *Brooks* described the totality-of-the-circumstances analysis to include examination of "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." 838 N.W.2d at 569 (quotation omitted). The nature of the encounter includes what led the officer to suspect that the driver was under the influence, the officer's request that the driver submit to a test, including whether the driver was read the implied-consent advisory, and whether the driver had the opportunity to consult with an attorney. *Id.* Because the language of the implied-consent advisory makes clear that a person has a choice whether to submit to testing, "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572.

The supreme court concluded that Brooks voluntarily consented to three searches because he did not dispute that the police had probable cause to suspect him of driving under the influence; he did not contend that police failed to follow proper procedures outlined under the implied-consent law; the police read him the implied-consent advisory, which made clear that he had a choice of whether to submit to testing; and he spoke to an attorney before agreeing to submit to testing. *Id.* at 569-70. The court further noted that Brooks was not subject to repeated police questioning and did not spend days in custody before consenting. *Id.* at 571. The record before the supreme court persuaded them that Brooks "was [not] coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.*

As in *Brooks*, Kraus does not dispute that the officer had probable cause to suspect that he was driving under the influence. Nor does Kraus contend that the officer failed to follow the proper procedure of the implied-consent law. Officer Stier twice read the implied-consent advisory to Kraus, and Kraus indicated that he understood the advisory and wished to consult with an attorney. After consulting with an attorney, Kraus agreed to submit to testing. Further, Kraus was aware, because he was read the implied-consent advisory, that he had a choice whether to submit to testing. Finally, before Kraus agreed to take a breath test, he had not been confronted with repeated police questioning or held in custody for an unreasonable period of time. Kraus testified that the officer "didn't use any force or threats" and that he "freely and voluntarily" took the test. Thus, similar to *Brooks*, nothing in the record before us suggests that Kraus's will was overborne or his capacity for self-determination critically impaired when he made the testing decision.

5

*See Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 2047 (1973) (stating that consent is coerced when a suspect's "will has been overborne and his capacity for self-determination critically impaired").

While Kraus argues that he had no alternative other than to take the test, the supreme court rejected the argument that consent is per se involuntary because of the attendant threat of a criminal charge for test refusal. *Brooks*, 838 N.W.2d at 570 ("[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test."). Further, while the implied-consent advisory includes language that test refusal is a crime, Kraus's attorney advised Kraus that test refusal is a greater crime than a DWI charge. Thus, Kraus's belief that he had to take a breath test or face a greater criminal charge was the result of his attorney's advice.

Kraus also argues that his consent was not voluntary because he clearly told the officer that he was not consenting. "'Consent' that is the product of official intimidation or harassment is not consent at all." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388 (1991). But

> involuntariness of a consent to a police request is not to be inferred simply because the circumstances of the encounter are uncomfortable for the person being questioned. Rather, it is at the point when an encounter becomes coercive, when the right to say no to a search is compromised by a show of official authority, that the Fourth Amendment intervenes.

6

*State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994); *see Schneckloth*, 412 U.S. at 225, 93 S. Ct. at 2047 (describing a coercive encounter occurring when "will has been overborne and . . . capacity for self-determination critically impaired").

The record does not show that Kraus's right to refuse testing was compromised by a show of official authority or that his will was overborne and his capacity for self-determination was critically impaired. When asked to submit to testing, Kraus replied: "I guess I will take your test, but I am not consenting." Officer Stier replied: "Duly noted," and interpreted this to mean that Kraus "would take the test." Kraus then willingly walked into the breath-testing room and provided a sample. Kraus's words, "I guess I will take your test," followed by his action of freely walking into the breath-testing room and taking a test support a determination that his consent was voluntary. *See Brooks*, 838 N.W.2d at 568-69 (stating that consent may be implied by action). The dissent suggests that we fail to consider "what was said and how it was said" because Kraus's statement "'I am not consenting' [] directly contradicted his earlier statement 'I guess I will take your test.'" We considered this contradiction and noted that it was followed by Kraus's next contradiction of freely walking into the breath-testing room and voluntarily submitting to the test. *See id.*

Just as we have concluded that a driver refused testing by his actions even after verbally consenting, Kraus's actions here showed that he voluntarily consented to the test. *See Cole v. Comm'r of Pub. Safety*, 535 N.W.2d 816, 818 (Minn. App. 1995) (holding that driver "constructively refused" to submit to a test by failing to provide adequate breath samples). Because consent can be implied by action rather than words

7

(or in addition to words), the district court's finding that Kraus's consent to testing was not voluntary is clearly erroneous. *See Diede*, 795 N.W.2d at 846-47 (stating that findings of facts are clearly erroneous when, "on the entire evidence, [the appellate court is] left with the definite and firm conviction that a mistake occurred").

Kraus also argues that he is unlike the driver in *Brooks*, who had more than one felony DWI incident, because he has no previous DWI arrest. But that is only one factor in the totality-of-the-circumstances analysis. Kraus also claims that because he served in the Navy for 21 years he follows orders and respects authority. He asserts that when he was told test refusal is a crime, he followed orders and submitted to the test. Kraus indeed followed orders: he followed his attorney's advice to the last detail, by parroting his attorney's words—that he would submit to the test but was not consenting. He followed his attorney's advice to take a test rather than refuse, because a refusal would result in a greater charge. *See Brooks*, 838 N.W.2d at 571-72 (stating that the fact that Brooks consulted with counsel, who functioned "as an objective advisor who . . . explain[ed] the alternative choices," before agreeing to take a test reinforced the conclusion that his consent was not illegally coerced).

The dissent takes exception to our analysis of this single factor, asserting that Kraus is a very different "kind of person" from Brooks. But *Brooks* does not provide a thorough analysis of this factor. The facts available about the type of person *Brooks* is related to the offenses with which Brooks was charged; there were no tangential considerations of Brooks's character. Thus, while Kraus testified about his navy-veteran background, the officer was not aware of Kraus's history when he stopped him for DWI.

8

*Brooks* does not suggest, and we cannot expect, officers to thoroughly investigate each offender's background during the implied-consent process. Additionally, like Kraus, many first-time DWI offenders are a very different "kind of person" than Brooks, who was facing charges stemming from three separate DWI incidents. *See id.* at 565 (consolidating three separate driving incidents that took place during a six-month period).

We cannot distinguish this case from *Brooks* merely because Kraus used the words "I am not consenting." Kraus uttered those words between stating, "I will take your test," and willingly taking the test. Kraus had a choice between taking a test and not taking a test. *See id.* at 572 (stating that a person has a choice whether to submit to testing, and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness"). An affirmance would give drivers a supposed "free pass" to avoid consent by using the magic words "I will submit (or acquiesce) to the test but I do not consent." An individual either consents or refuses; for better or worse, an individual cannot have it both ways.

Kraus took a test and there is no indication that he took the test because he was coerced. The record does not show that Kraus's "right to say no to a search [wa]s compromised by a show of official authority." *See Dezso*, 512 N.W.2d at 880. Nor does the record show that Kraus's will was "overborne and his capacity for self-determination critically impaired." *See Schneckloth*, 412 U.S. at 225, 93 S. Ct. at 2047. The commissioner had to show by only a "preponderance of the evidence" that Kraus freely and voluntarily consented; the totality of the circumstances satisfies the commissioner's burden. *See Brooks*, 838 N.W.2d at 568. The officer was not required to obtain a

warrant prior to the test, and the test was not an unreasonable search. We therefore reverse the district court's decision to rescind the revocation of Kraus's driver's license.

**Reversed.**

**CLEARY,** Chief Judge (dissenting)

I respectfully dissent from the majority's opinion. I would affirm the district court's order holding that respondent did not knowingly and voluntarily consent to the search and did not waive the Fourth Amendment requirement that law enforcement must obtain a warrant prior to a search.

As the majority notes, the supreme court held in *State v. Brooks* that:

> For a search to fall under the consent exception, the [commissioner] must show by a preponderance of the evidence that the [driver] freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances . . . *An individual does not consent, however, simply by acquiescing to a claim of lawful authority.*

838 N.W.2d 563, 568-69 (Minn. 2013) (emphasis added) (quotation marks and citations omitted), *cert. denied*, 132 S. Ct. 1799 (2014).

*State v. Brooks* further held that an analysis of "totality of the circumstances" includes three prongs: "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569.

In my opinion, the majority's analysis would render the second and third prongs of the *Brooks* test relatively meaningless. The second prong, what "kind of person defendant is," certainly includes the extent of the defendant's exposure to the criminal justice system. Brooks, for example, was a recidivist with substantial experience with the implied consent advisory process. *Id.* at 565-66. Here the court fails to give weight to the fact that respondent is a very different "kind of person" from Brooks. Respondent testified that he was a Navy veteran who had served for 21 years as a fighter pilot and

chief pilot for advanced jet training, as well as an instructor and that this was his first arrest and his first exposure to the implied consent advisory process. This difference in experience could significantly affect his ability to understand which actions and words constitute "voluntary consent" and further influence his "acquiescing to a claim of lawful authority."

The majority also fails to consider the import of the third prong of *Brooks*, "what was said and how it was said." *Id.* at 569. The words exchanged between Officer Stier and respondent left unclear whether respondent had consented. When respondent stated, "I am not consenting," he directly contradicted his earlier statement, "I guess I will take your test." In addition, the words used leave the impression that respondent intended to avoid—and indeed, thought he had avoided—the legal implications of "consent" by specifically stating that he was "not consenting." In other words, "what was said and how it was said" left a readily apparent ambiguity as to whether consent had been given, and indicated that respondent may have had an inaccurate understanding of which actions and words constitute voluntary consent.

In such ambiguous situations, it should be incumbent upon the law enforcement officer to clarify whether consent has actually been given. If consent has been given, a sample should be taken of the individual's breath. If consent has not been given or remains equivocal, then either a warrant should be obtained or the matter should be treated as a test refusal. The state bears the burden of establishing voluntary consent as an exception to the Fourth Amendment warrant requirement. *State v. Johnson*, 689 N.W.2d 247, 251 (Minn. App. 2004). Where we allow law enforcement officers to

simply assume that voluntary consent has been given (in this case, the officer did not even bother to note the conversation in the police report, although the audio recording confirmed the language used by appellant), without requiring them to verbally clarify major ambiguities apparent under the circumstances, we relieve the state of a substantial portion of its burden to establish voluntary consent.

The district court analyzed whether consent had been given freely and voluntarily under the test established in *Brooks*. We must affirm the district court's application of the *Brooks* test unless the district court's analysis was clearly erroneous. *See State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). Because I believe that the district court was not clearly erroneous in concluding that the state had failed to establish respondent's voluntary consent under the *Brooks* totality of the circumstances test, I would affirm.