Xavier GARZA, Jr., Respondent,

v.

STATE of Minnesota, Petitioner,
Appellant.

Xavier Garza, Sr., Respondent,

v.

State of Minnesota, Petitioner,
Appellant.

Nos. C8–00–526, CX–00–527.

Supreme Court of Minnesota.

Aug. 16, 2001.

Michael Hatch, Attorney General, Kelly
S. Kemp, Assistant Attorney General, Lisa

Borgen, Clay County Attorney, for appellant.

Mark D. Nyvold, for Xavier Garza, Jr., respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant State Public Defender, for Xavier Garza, Sr., respondent.

## OPINION

STRINGER, Justice.

Following a controlled buy of marijuana by Fargo, North Dakota police, the trail of supply led to the home of Xavier Garza, Sr., his son, Xavier Garza, Jr. (collectively respondents) and Dora Garza, the wife of Xavier Garza, Sr., in Dilworth, Minnesota. A Clay County Sheriff's Office detective executed a search of the residence and storage shed. The warrant included a provision for an unannounced entry and was issued by a magistrate based upon the detective's affidavit that recited numerous incidences of prior drug dealing, possession and usage by Xavier Garza, Jr. but was not specific as to the need for an unannounced entry. When the warrant was executed, only Dora Garza was home. Based upon evidence seized in the raids, including currency used by Fargo police for the controlled buy of narcotics, respondents were arrested and charged with one count each of a fourth-degree controlled substance crime in violation of Minn.Stat. § 152.024, subd. 1(4) (2000). Respondents' pretrial motion to suppress the seized evidence based on the failure of the warrant to furnish particularized reasons for the need for an unannounced entry was rejected, and respondents were tried on stipulated facts and found guilty as charged. Respondents initially filed notices of appeal, but then instead pursued state postconviction relief. After the trial court denied postconviction relief, respondents appealed and the court of appeals reversed the convictions on the ground that the search warrant was issued without a showing of particularized circumstances justifying the need for an unannounced entry. We affirm in part and reverse in part.

On February 10, 1998, a Fargo, North Dakota police officer made a controlled buy of 56 grams of marijuana from Lucas Sipes. Sipes identified his supplier as "Guy" (later identified as Guy Nicholls) who lived in a trailer court in Moorhead, Minnesota, and said that Nicholls received his marijuana from a person named "Harvey" and it was delivered in a red Marlboro bag at Harvey's home in Dilworth, Minnesota. The next day the police set up a surveillance of Harvey's home in Dilworth, and observed Nicholls arrive in a vehicle with Rebecca Roth, enter the residence and leave with a red Marlboro bag. That same day the police seized three ounces of marijuana, packaging materials and a scale from Nicholls' trailer and arrested Nicholls and Roth. Roth provided a statement saying that respondents sold and stored marijuana at their house. Further evidence of drug dealing occurred on February 22, 1998 when Xavier Garza, Jr. was stopped by Dilworth police for a traffic violation and was found in possession of marijuana. On the morning of February 24, 1998 Dilworth police searched the garbage at the Garza residence and discovered a marijuana smoking device and small containers with marijuana residue.

Later in the day on February 24, 1998 a detective with the Clay County Sheriff's Department applied for a search warrant for respondents' residence and storage shed supported by an affidavit stating that authorities had reason to believe that they would find controlled substances and evi-

dence of the sale and distribution of controlled substances at the Garza residence. It identified Garza, Jr. as the subject of a three-year investigation, his arrest for possession of marijuana in 1995 after receiving information that he was selling marijuana out of his residence, and observations of activity consistent with drug trafficking outside his residence. The affidavit further referred to an informant's statement that he purchased drugs from Garza, Jr., other information from various sources that Garza, Jr. was involved in the sale of drugs, Roth's statements to the police, the traffic stop, and the smoking device found in the garbage. The affidavit also included a request for an unannounced entry based on the following statement:

> Persons involved in Drug trafficking will destroy evidence if given prior warning. Drug traffickers also will use violence if given prior warning therefore Law Enforcement needs the element of surprise to protect themselves from harm.

Based upon the affidavit, the magistrate issued the search warrant with a provision authorizing an unannounced entry for the Garza residence and the shed located on the southeast corner of the lot.

That same day authorities executed the search warrant, entering the Garza residence without announcing their authority or purpose. Neither respondent was home at the time the search was conducted but Dora Garza was present. Police found hidden under some clothing in Garza Sr.'s bedroom $1,465 in currency, including $150 in "buy money" from the Fargo Police Department narcotics "buy" fund. In Garza, Jr.'s bedroom police found marijuana, marijuana smoking devices, and other drug-related evidence. In the storage shed located outside the residence police found a pound of marijuana.

Respondents were charged with one count each of violating Minn.Stat. § 152.024, subd. 1(4) (sale of a controlled substance in a school zone). Respondents filed motions to suppress the evidence seized during the search of their residence on the grounds that the affidavit supporting probable cause for the search warrant contained reckless misrepresentations and omissions and that the application for an unannounced entry failed to establish particularized circumstances justifying the need for an unannounced entry. After an omnibus hearing the trial court denied the motions to suppress.

Respondents were found guilty following trials to the court on stipulated facts pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). They initially appealed directly to the court of appeals but were granted a dismissal without prejudice to pursue postconviction relief. Respondents' challenge to the unannounced entry was rejected on the postconviction court's determination that under our decision in *State v. Lien*, 265 N.W.2d 833 (Minn.1978), and the decision of the U.S. Supreme Court in *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the particularized facts required to support an unannounced entry were supplied by police testimony at the omnibus hearing-Xavier, Jr.'s propensity for violence and his possible possession of a firearm-and that this testimony amounted to a "strong showing" that an announced entry would be dangerous to the officers. The state did not contest respondents' standing to raise the unannounced entry in light of their absence from their residence when the warrant was executed, nor did the trial court refer to it in its order denying postconviction relief.

The court of appeals reversed, relying on the decision of the Supreme Court in *Richards* and our decision in *State v. Was-*

*son,* 615 N.W.2d 316 (Minn.2000). It reasoned that after *Richards* an unannounced entry must be supported by more than boilerplate language in the affidavit stating that an unannounced entry is necessary to avoid injury and destruction of evidence and evidence that the premises is being used for drug trafficking. The court then addressed the ruling by the postconviction court relying on the police testimony at the omnibus hearing to supply the missing particularized showing of need. The court of appeals held that statements made after-the-fact at an omnibus hearing cannot be the basis of an unannounced entry because they were not provided to the magistrate in the affidavit attached to the warrant application. Thus there was no advanced authorization of the unannounced entry. The court held that the search of the shed was also unauthorized because it was within the curtilage of respondents' home and was therefore subject to the same constitutional protection.

The state argued for the first time at the court of appeals that respondents did not have standing to contest the unannounced entry because they were not home when the search was conducted. The court of appeals disagreed holding that respondents had standing because they were long-time residents in their home. The state also raised a "good faith" exception argument under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (Cal.1984), that even if the unannounced entry was unauthorized, the evidence seized should not be suppressed because the police "acted in good faith reliance on a search warrant issued by a neutral and detached magistrate." The court held that the *Leon* "good faith" exception rule does not apply to police failure to provide sufficiently particularized justification for an unannounced entry. The court therefore ordered that the evidence seized in the unannounced entry search must be suppressed and reversed the conviction.

## I.

Because standing is a threshold issue, we begin with the state's argument that respondents do not have standing to contest the unannounced entry provision of the search warrant because they were not home when the search warrant was executed. The state did not raise an issue of standing at either the omnibus hearing or the postconviction hearing, and we ordinarily will not review issues that are raised for the first time on appeal unless a decision is necessary in the interests of justice. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989). The record is silent as to harm that might have been inflicted, if any, by reason of the unannounced entry despite respondents' absence from the dwelling, or to the privacy interests of others that might have been invaded, but the court of appeals held that respondents had standing because they had a "long-term connection to the premises." While we question whether standing to challenge an unannounced entry can be conferred as the court of appeals ruled, we conclude that the state waived the issue of standing by failing to raise it in an omnibus hearing in the trial court. At that point the factual details of the entry could have been developed to determine to what extent the respondents' absence removed any practical significance to the unannounced entry. Because the state failed to take advantage of its opportunity to build a factual record with respect to standing, we do not believe that resolution of the standing issue is necessary to the interests of justice. We therefore affirm the court of appeals' ruling that respondents have standing but on the basis that the state waived its right to raise the issue by failing to assert it before the trial court.

## II.

■ We next consider whether the information presented in the affidavit was sufficient to justify a search warrant providing for an unannounced entry. Inquiry into the need for an unannounced entry is included in the reasonableness inquiry into the warranted search under the Fourth Amendment of the U.S. Constitution, *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), and "evidence should be suppressed when the circumstances do not warrant an unannounced entry," *Wasson,* 615 N.W.2d at 320. Facts justifying an unannounced entry must be presented to the magistrate at the time of application, *Lien,* 265 N.W.2d at 838. Failure to supply the necessary supportive facts to the issuing magistrate will nullify the warrant and facts later presented, as here, will not bring the warrant back to life.

In 1997 the U.S. Supreme Court in *Richards* held that "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, *under the particular circumstances,* would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416 (emphasis added). In enunciating this principle, the Supreme Court struck down the Wisconsin Supreme Court's blanket rule approving unauthorized, unannounced entries for felonious drug cases. *Id.* at 395, 117 S.Ct. 1416. The Wisconsin Supreme Court based its ruling on the principle that police officers are never required to knock and announce their presence when executing a search warrant in a felony drug investigation because of the dangerous nature of drug trafficking. *State v. Richards,* 201 Wis.2d 845, 549 N.W.2d 218, 221 (1996). The Supreme Court rejected the rationale of the Wisconsin Supreme Court because it overgeneralized the risk of violence and danger in drug investigations and could be applied to support blanket exceptions to the knock-and-announce rule for other kinds of criminal activity. *Richards,* 520 U.S. at 392–94, 117 S.Ct. 1416.

■ The state contends, nonetheless, that information in the affidavit tending to show that respondents used their residence as an outlet to sell drugs is sufficient under our 1978 decision in *Lien* to justify the warrant authorizing the unannounced entry. The state fails to take into account that under the Supreme Court ruling in *Richards* requiring a showing of need "under particular circumstances," which we adopted in *Wasson,* a generalized showing of drug trafficking is not sufficient justification for an unannounced entry because evidence of drug trafficking does not, *ipso facto,* equate to a conclusion that an announced entry would be dangerous or futile, or that it would result in the destruction of evidence. While the showing required to justify an unannounced entry is not high, *Wasson,* 615 N.W.2d at 320, there was no particularized showing of dangerousness, futility or destruction of evidence here. The only expression of need for an unannounced search was in general terms, that "Persons involved in Drug trafficking will destroy evidence * * * [and] will use violence" with no factual nexus to particularized facts of dangerousness, futility or destruction of evidence related to the search of respondents' residence. We conclude the evidence of drug trafficking in the affidavit does not meet the particularized circumstances standard in *Richards* and *Wasson.*[1] We

---

**1.** To the extent *Lien* can be understood to

authorize an unannounced entry on a show-

therefore affirm the court of appeals in its conclusion that the unannounced entry provision of the warrant was unauthorized and the evidence seized in the search of the home must be suppressed.

## III.

The state contends that even if the unannounced entry into respondents' home was not constitutional, the marijuana discovered in the shed is admissible because the shed is not accorded the same Fourth Amendment protection from unannounced entry as the dwelling. The court of appeals determined that the evidence recovered in the shed was not admissible because the shed was within the curtilage of the dwelling and therefore the knock-and-announce rule applied to the shed. The state argues the knock-and-announce rule should not apply to the shed even if it is within the curtilage of the dwelling because the purposes of the rule are not implicated when the building to be searched is an unoccupied storage shed.

■ We have stated that the purpose of the knock-and-announce rule is to prevent the unnecessary destruction of property and mistaken entry into the wrong premises, protect against unnecessary shock and embarrassment and decrease the potential for a violent response when a search is executed. *Wasson*, 615 N.W.2d at 319–20. These objectives are implicated when a building within the curtilage of a dwelling is searched, particularly with regard to minimizing damage and avoiding a violent response of an owner to a stranger forcing entry into the building. A dwelling's curtilage is generally the area so immediately and intimately connected to the home that within it, a resident's reasonable expectation of privacy should be respected. *See State v. Crea*, 305 Minn.

342, 345–46, 233 N.W.2d 736, 739 (1975). A reasonable expectation of privacy would extend to a storage shed if located within the curtilage because entry would implicate rights to privacy to personal property within the shed as well as instigate a potentially violent response of a resident. Thus, we hold that absent a showing of necessity, authorities making an unannounced entry into a storage building within the curtilage of a dwelling must have a valid warrant to do so or must first announce their authority and purpose at the dwelling before entering the storage building.

■ The location of the shed with respect to respondents' home was not established at the trial court and there is no record from which to determine whether the shed lay within the curtilage of the dwelling. We therefore reverse the ruling of the court of appeals with respect to the suppression of evidence found in the shed and remand to the trial court to determine whether the shed lay within the curtilage of respondents' dwelling.

## IV.

■ Finally, the state argues that even if the unannounced entry was unconstitutional, the officers acted in good faith on the basis of a neutral magistrate's authorization and therefore under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), the evidence recovered in the house and the shed was admissible. In *Leon* the government sought the admission of evidence seized pursuant to an invalid search warrant on the basis that the officers acted in good faith on a facially-valid warrant. *Id.* at 902–03, 104 S.Ct. 3405. Reasoning that the exclusionary rule functions to deter unlawful police behavior, the Supreme Court held that the

ing only that the premises were used for drug trafficking, it is overruled.

evidence seized was admissible in large part because the officers acted in good faith on the warrant of a neutral magistrate. *Id.* at 915–26, 104 S.Ct. 3405. While we have no reason to believe police executing the warrant in this case did not act in good faith, even if we were to adopt *Leon* the good faith of the police cannot cure the absence of particularized circumstances in the warrant application justifying an unannounced entry. *See State v. Zanter,* 535 N.W.2d 624, 634 (Minn.1995) (holding good faith of police cannot cure clear insufficiency of application for warrant). We interpret the requirement in the Minnesota Constitution that persons not be subject to unreasonable searches and seizures to require sufficiently particularized circumstances justifying an unannounced entry before such entry may be authorized. As we stated in *Wasson,* the showing is "not high," but the officer must point to a particular fact about the residence at issue that would justify an unannounced entry. 615 N.W.2d at 320–21.

In summary, we affirm the court of appeals in its conclusion that the unannounced entry into the respondents' dwelling was unauthorized and evidence seized in the dwelling must be suppressed. As to the evidence seized in the search of the shed, we reverse the court of appeals' ruling that the shed was a part of the curtilage of the dwelling as unsubstantiated by the record and remand to the trial court for determination of this issue and the admissibility of the evidence seized in the shed.

Affirmed in part; reversed in part.