*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1606**

State of Minnesota,
Respondent,

vs.

Emmanuel Gordon Anim,
Appellant.

**Filed July 13, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-11-28953

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Emmanuel Anim challenges the district court's approval of a nighttime

search warrant, arguing that the search warrant application did not provide reasonable

suspicion to justify the nighttime search. He further argues that his waiver of the right to counsel was invalid because it was not knowing, voluntary, or intelligent. Because the search warrant application provided reasonable suspicion to justify the nighttime search, and his waiver was valid, we affirm.

## FACTS

On July 5, 2011, at 9:00 p.m., Minneapolis police officers executed a nighttime search warrant at appellant Emmanuel Anim's residence, located on Stevens Avenue South. The following facts supported the search warrant application.

A confidential informant told police that Anim could sell him crack cocaine from Anim's residence on Stevens Avenue South. The informant described Anim's residence as a room on the main level of a building. Police arranged a controlled buy between the informant and Anim, but before the buy was scheduled to occur, Anim called the informant and said that he was out of crack cocaine. Anim asked the informant to drive him to his home where he said that he had large quantities of crack cocaine.

The informant picked up Anim and police followed them to Anim's home. The police observed Anim get out of the informant's car and enter the building on Stevens Avenue South. Shortly after, Anim returned to the informant's car. The police had wired the informant's car for audio surveillance and heard Anim tell the informant how much crack cocaine he had sold that day and that he had more to package for sale at his home. Police then stopped the informant's car. During the stop, Anim refused to open his mouth, and he swallowed the crack cocaine that he was going to sell to the informant. Police arrested Anim during the stop.

2

Sometime after Anim's arrest, police went to Anim's room at Stevens Avenue South and found that the door was ajar. Police locked the door using a key found on Anim's person when he was arrested. Police also applied for a search warrant for Anim's residence immediately following his arrest. The warrant application stated that Anim had numerous arrests for narcotics violations and had been convicted and served sentences for narcotics violations on at least four occasions. The warrant application also requested to perform the search at night because "Emmanual Gordon Asare Anim . . . was taken into custody late into the daytime hours and [police] believe[d] that a search warrant should be executed in the nighttime hours to assure that evidence is not removed or destroyed."

The issuing magistrate granted the nighttime search warrant, and police executed it at approximately 9:00 p.m. on the day of Anim's arrest. During the search, police found 24 packages of crack cocaine and numerous documents with Anim's name on them, including papers from the Minnesota Department of Public Safety, an expired driver's license, paystubs, and a sentencing worksheet from a prior case.

In September 2011, the state charged Anim with felony fifth-degree possession of a controlled substance. *See* Minn. Stat. § 152.025, subd. 2(b)(1) (2010). Anim moved to suppress evidence from the search, arguing that the police did not have reasonable suspicion for a nighttime warrant. The district court denied his motion. It concluded that a nighttime search was supported by reasonable suspicion because (1) police arrested Anim late in the afternoon and drafted the warrant application at 8:00 p.m. that same night; (2) police overheard Anim tell the informant that he had more crack cocaine to package for sale at his residence; (3) police knew that Anim's apartment was one

bedroom in a house presumably occupied by other people; and (4) Anim swallowed the crack cocaine that he was going to sell the informant.

Before trial, Anim opted to represent himself, and the district court appointed his public defender to act as standby counsel.[1] In March 2014, a two-day jury trial was held, and Anim was found guilty of fifth-degree possession of a controlled substance. Anim appealed.

**D E C I S I O N**

**I.      Nighttime Search Warrant**

Minnesota Statutes section 626.14 (2014) states that search warrants can only be served between 7:00 a.m. and 8:00 p.m. unless the court determines that a nighttime search "is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public." "[A]n application for a nighttime warrant under section 626.14 must establish reasonable suspicion that a nighttime search is necessary to preserve evidence or to protect officer or public safety." *State v. Jackson*, 742 N.W.2d 163, 167-68 (Minn. 2007). The required showing for reasonable suspicion is not high. *State v. Wasson*, 615 N.W.2d 316, 320 (Minn. 2000). But it requires more than an unarticulated hunch; police must show "something that objectively supports the suspicion at issue." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (quotation omitted).

---

[1] We note that the district court's appointment of a public defender to act as standby counsel was error under Minnesota law. *See* Minn. Stat. § 611.26, subd. 6 (2010) ("The district public defender must not serve as advisory counsel.").

4

We give great deference to an issuing judge's determination of whether a nighttime search warrant is authorized under section 626.14 because we do not want to set "such a high standard for warrants that the police would be discouraged from seeking [them] in the first place." *Id.* at 927-28. In reviewing pretrial orders on motions to suppress, the district court's findings of fact are reviewed under a clearly erroneous standard, and its legal conclusions are reviewed de novo. *Id.* at 927.

Anim argues that the search warrant application lacked facts showing reasonable suspicion to justify a nighttime search. He contends that the search warrant application merely contained "boilerplate" language to support a nighttime search and failed to provide any particularized and objective facts to justify the need for a nighttime search. We disagree.

Boilerplate language in a search warrant application is inadequate to justify a nighttime search warrant. *See id.* at 928. But an issuing magistrate can draw reasonable inferences from *all* of the factual allegations in the warrant application. *Id.*

Here, the warrant application contained much more than boilerplate language. Police knew that Anim had more crack cocaine to package for sale at his residence based on Anim's comments to the informant during the controlled buy. Police also knew that Anim would willingly destroy evidence because when police confronted him during the traffic stop, he swallowed the package of crack cocaine that he was going to sell the informant. Moreover, Anim's residence was one bedroom in a shared home, and while police had locked Anim's bedroom door after his arrest, they had no way of knowing whether anyone else had a key. *Cf. United States v. Palumbo*, 735 F.2d 1095, 1097 (8th

5

Cir. 1984) ("We believe that the officers' fear that [appellant's accomplice] would become suspicious and destroy the cocaine was reasonable, and created an exigency sufficient to justify the warrantless entry and arrest.").

Anim argues that the circumstances here are analogous to the no-knock provisions of search warrants that were struck down in *Richards v. Wisconsin*, 520 U.S. 385, 117 S. Ct. 1416 (1997), and *Garza v. State*, 632 N.W.2d 633 (Minn. 2001).[2]

In *Richards*, the United States Supreme Court examined a Wisconsin Supreme Court rule that "*never* required [officers] to knock and announce their presence when executing a search warrant in a felony drug investigation." 520 U.S. at 387-88, 117 S. Ct. at 1418. In overturning this rule, the Supreme Court concluded that the Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement for felony drug investigations. *Id.* at 388, 117 S. Ct. at 1418.

In *Garza*, the issue was whether facts in the search warrant application showed sufficient reasonable suspicion to justify a no-knock provision. 632 N.W.2d at 638. The only sentence in the warrant application supporting reasonable suspicion stated that "Persons involved in [d]rug trafficking will destroy evidence . . . [and] will use violence." *Id.* The supreme court concluded that this language was insufficient to justify a no-knock provision because it lacked any "particularized showing of dangerousness, futility or destruction of evidence." *Id.*

---

[2] To request a no-knock provision in a search warrant application, police must show that reasonable suspicion exists—the same standard for a nighttime search provision. *Garza*, 632 N.W.2d at 638.

The circumstances in *Richards* and *Garza* stand in stark contrast to the warrant application here. In *Richards*, the Wisconsin Supreme Court had created an automatic approval for the no-knock provision in all felony drug investigations. In other words, police did not have to provide any additional facts, beyond the charge, to justify a no-knock provision. In *Garza*, the no-knock provision was supported by broad language alleging that persons involved in drug trafficking—and not the suspect specifically—would destroy evidence and use violence. Unlike the blanket approval for no-knock provisions in *Richards* and the general language in *Garza*, the warrant application here contained facts *particularized* to Anim that gave rise to reasonable suspicion that evidence could be destroyed: police knew Anim had drugs in his residence, he had showed a willingness to destroy evidence, and the communal set-up of his one-bedroom residence created concerns that the evidence was vulnerable to destruction.

Because reasonable suspicion supported a nighttime search of Anim's residence and because we give great deference to the issuing magistrate's determination, we conclude that the district court properly denied Anim's motion to suppress.

## II.    Waiver of Right to Counsel

The United States and Minnesota Constitutions guarantee a criminal defendant the right to the assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. 1, § 6. "Though the right to counsel is a constitutional requirement, it may be relinquished in three ways: (1) waiver, (2) waiver by conduct, and (3) forfeiture." *State v. Jones*, 772 N.W.2d 496, 504 (Minn. 2009).

When a defendant waivers his constitutional right to counsel, we require the waiver to be knowing, intelligent, and voluntary. *Id.* "Whether a waiver of a constitutional right was knowing, intelligent, and voluntary depends on the facts and circumstances of the case, including the background, experience, and conduct of the accused." *State v. Rhoads*, 813 N.W.2d 880, 884 (Minn. 2012). This court reviews a waiver-of-counsel claim under a clearly erroneous standard. *Id.* at 885. A finding is clearly erroneous if no reasonable evidence supports the finding or if this court is left with the definite and firm conviction that a mistake has been made. *Id.*

When a defendant waives his right to counsel, the district court has a statutory duty to obtain a written waiver or an oral waiver on the record. Minn. Stat. § 611.19 (2014). Before accepting the waiver, Minnesota Rule of Criminal Procedure 5.04, subdivision 1(4) requires the district court to advise the defendant of the following:

(a) nature of the charges;
(b) all offenses included within the charges;
(c) range of allowable punishments;
(d) there may be defenses;
(e) mitigating circumstances may exist; and
(f) all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.

Anim argues that his waiver was not valid under these statutory and procedural guidelines. After carefully reviewing the record, we disagree.

It is undisputed that the district court did not obtain a written waiver of Anim's right to counsel as required by statute. But deviation from statutory and procedural guidelines does not invalidate a waiver if the surrounding facts and circumstances show

8

that the waiver was valid. *See Rhoads*, 813 N.W.2d at 886; *see also State v. Worthy*, 583 N.W.2d 270, 276 (Minn. 1998) (stating that a valid waiver may exist even if the record lacks a detailed colloquy between the defendant and the district court); *State v. Nelson*, 523 N.W.2d 667, 670-71 (Minn. App. 1994) (holding that a defendant's request to proceed pro se—reaffirmed at three separate district court proceedings—was valid despite the absence of a thorough inquiry, written waiver, or waiver under oath).

Here, the record shows that Anim understood the charges against him and the possible punishments. In February 2013, in the context of discussing the state's plea offer, the district court advised Anim that he faced a "statutory sentence [of] 180-days minimum" because of his prior conviction. The district court warned Anim that he could serve more than the 180 days if he were convicted but advised him that he had "every right to have [a trial.]" Although the district court's discussion in February 2013 focused on the plea offer, it thoroughly advised Anim of the consequences of his charges. In January 2014, the district court again reiterated that Anim faced "fairly serious consequences" and urged him to reassess his decision to proceed pro se.

Additionally, Anim was well advised throughout the proceedings: he had a court-appointed attorney from the date of his first appearance, October 12, 2011, to the date that he discharged his public defenders, May 10, 2013, nearly two years later. "When a defendant has consulted with an attorney prior to waiver, a trial court could reasonably presume that the benefits of legal assistance and the risks of proceeding without it had been described to defendant in detail by counsel." *Worthy*, 583 N.W.2d at 276 (quotation omitted). Anim's two public defenders had also admonished him of the consequences of

9

proceeding pro se, and both had numerous conversations with Anim about representing himself. And after Anim decided to represent himself, the district court appointed standby counsel.

Moreover, Anim effectively navigated the legal system throughout the proceedings. He moved for a change of venue, successfully moved for a continuance, made a series of motions before trial (ensuring that his prior convictions were not mentioned and requesting to subpoena the informant), and made *Batson* challenges during jury selection. Anim's actions showed that he was familiar with the legal system and understood it. *See id.* (noting that a defendant's familiarity with the legal system was a circumstance showing a valid waiver of counsel).

Finally, we note that Anim previously appealed a waiver-of-counsel claim to this court. *See State v. Anim*, No. A07-1016, 2008 WL 5214289 (Minn. App. Dec. 16, 2008), *review denied* (Minn. Feb. 17, 2009). In his first waiver-of-counsel appeal, Anim had dismissed his public defenders and opted to represent himself, as he did here. *Id.* at *1. We affirmed the district court's finding that Anim's waiver was valid and recognized that "Anim had three trimesters of college courses at the University of Minnesota, demonstrated detailed knowledge about court processes, had previous experience with the criminal justice system and with self-representation, and voluntarily chose to discharge his public defender." *Id.* at *3.

In sum, because the record shows that Anim was thoroughly advised of the consequences of his charges and his decision to represent himself, knew the legal system and navigated it successfully, was represented by counsel for nearly two years, had

10

standby counsel, and had previously appealed a waiver-of-counsel claim, we conclude that the district court did not clearly err in finding that Anim validly waived his right to counsel. *See State v. Brodie*, 532 N.W.2d 557, 557 (Minn. 1995) ("This is not a case in which the record is silent on whether the defendant knowingly and voluntarily waived his right to counsel.").

Anim also submitted a pro se supplemental brief. In his brief, he argues that "there was no physical evidence to issue a warrant," he never "physically or constructively" possessed drugs on the day of his arrest, and drugs were never recovered on his person. He further contends that the district court committed numerous procedural errors at trial, including not allowing him to subpoena and cross examine the informant, refusing his request for a second Rasmussen hearing, and using "legalese and coercion during two recesses in jury deliberation."

Anim's assertions are unsupported by legal arguments and fail to cite to any legal authority. Typically, this court does not "consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). In addition, after considering the merits of Anim's claims, we find them all to be groundless.

**Affirmed.**