STATE OF MINNESOTA

IN SUPREME COURT

A22-1314

Court of Appeals                                                        Anderson, J.
                                                    Took no part, Procaccini, J.

State of Minnesota,

                    Respondent,

vs.                                                              Filed: March 6, 2024
                                                    Office of Appellate Courts

Rebecca Julie Malecha,

                    Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Brian M. Mortenson, Rice County Attorney, Sean R. McCarthy, Assistant Rice County Attorney, Faribault, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Melvin R. Welch, Welch Law Firm, LLC, Minneapolis, Minnesota, for appellant.

Teresa Nelson, American Civil Liberties Union of Minnesota, Minneapolis, Minnesota, for amici curiae American Civil Liberties Union and American Civil Liberties Union of Minnesota.

Paul D. Sellers, Shauna Faye Kieffer, Minneapolis Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

_____

1

1.     The district court did not clearly err in finding that the defendant's arrest warrant had been quashed before her arrest.

2.     The good-faith exception to the exclusionary rule does not apply to evidence obtained during a search on a quashed warrant that appears active to law enforcement because of a clerical error by court administration in violation of Article I, Section 10, of the Minnesota Constitution.

Reversed.

O P I N I O N

ANDERSON, Justice.

The question presented is whether the good-faith exception to the exclusionary rule under the Minnesota Constitution, adopted for the first time in Minnesota in *State v. Lindquist*, 869 N.W.2d 863, 876–77 (Minn. 2015), should apply to evidence obtained during a search and arrest incident to a quashed warrant that appears active to law enforcement because of a clerical court error.

Appellant Rebecca Julie Malecha was arrested on a quashed warrant following an encounter with the police in Faribault. The officers searched Malecha incident to her arrest and discovered controlled substances. The officers later learned that Malecha's arrest warrant had been quashed by the district court but mistakenly appeared active in their database because of a clerical error by court administration. The State charged Malecha with four controlled substance crimes and she filed a motion to dismiss the charges based on an unconstitutional search. The district court granted her motion to dismiss. The State

appealed and, in a nonprecedential divided opinion, the court of appeals reversed the district court's order. *State v. Malecha*, No. A22-1314, 2023 WL 2359622 (Minn. App. Mar. 6, 2023).

Because we recognize several purposes served by the exclusionary rule, including deterring unlawful government conduct generally, and we conclude that applying the exclusionary rule here serves these remedial goals, we decline to extend the good-faith exception to the exclusionary rule under the Minnesota Constitution to the present facts. Therefore, we reverse the court of appeals and reinstate the district court's order dismissing the charges against Malecha.

**FACTS**

On November 12, 2020, the Rice County District Court issued a bench warrant for Malecha's arrest after she failed to appear for sentencing in another matter. Malecha's attorney moved to quash the warrant on December 11, 2020; a motion that the district court granted several days later. Because of a clerical error by court administration, however, the district court's order quashing the warrant was not transmitted to law enforcement. Therefore, neither the National Crime Information Center, which maintains a national database of active arrest warrants, nor the Rice County Sheriff's Office, which is responsible for updating local warrant information in the national database, knew that the arrest warrant for Malecha was no longer active as of December 15, 2020.

On March 7, 2021, a Faribault police officer encountered Malecha and believed the arrest warrant from November 2020 remained active. In accordance with established, standard law enforcement procedure, the officer contacted dispatch to confirm the validity

of the warrant. An officer at the Rice County Jail confirmed the existence of an active warrant by looking at the warrant itself, maintained both in the national database and the files of the Rice County Sheriff's Office. The officer relayed the confirmation to dispatch, and dispatch then relayed the confirmation to the officer in contact with Malecha. The officer arrested Malecha based on the warrant and, during a search incident to arrest, discovered methamphetamine.

Following Malecha's arrest, police learned that the district court had recalled the arrest warrant. On March 8, 2021, the day after Malecha's arrest, Rice County Court Administration issued a notice of judicial determination, providing "verification that . . . [the district court] did grant the request to recall the warrant on December 14, 2020 . . . and the warrant was recalled on December 15, 2020." On March 9, 2021, the day after Rice County issued the notice, the State charged Malecha with four controlled substance crimes.

Malecha moved to suppress evidence of the controlled substances and dismiss the charges, arguing that the officers subjected her to an unlawful search given the quashed warrant. At the contested omnibus hearing, the parties offered a recitation of undisputed facts and agreed to submit briefs on the issue of whether "police can rely on . . . dispatch for confirming a warrant if a judge signs a judicial determination, and it never gets processed." In the memorandum supporting her motion to dismiss, Malecha argued that the exclusionary rule applies to the evidence seized during her unlawful arrest and search. The State countered that because the district court order recalling the warrant was never recorded and transmitted by court administration, the warrant was still active at the time of Malecha's arrest and the officers conducted a lawful search incident to her lawful arrest.

4

Alternatively, the State argued that the exclusionary rule should not apply because exclusion of the evidence would not deter police misconduct.

The district court granted Malecha's motion to suppress the evidence and dismiss the charges. First, it concluded that "[i]t is clear from the facts that the warrant was quashed by the District Court and thus was no longer active, regardless of what information was provided to law enforcement." Thus, Malecha's arrest on a quashed warrant violated the Minnesota Constitution, and the exclusionary rule, if applied, would prevent the State from using evidence obtained from the arrest and subsequent search. Second, the district court concluded that the good-faith exception to the exclusionary rule in Minnesota did not apply, reasoning that under our court's precedent, the good-faith exception is applicable only if police obtain evidence in reasonable reliance on binding appellate precedent. Because the officers did not rely on binding appellate precedent, and instead relied on information not correctly updated by court administration, the court held that the exclusionary rule applied.

The State appealed the district court's order and, in a divided nonprecedential decision, the court of appeals reversed and remanded. *Malecha*, 2023 WL 2359622, at *3. Citing state and federal precedent, the court of appeals concluded that the exclusionary rule is premised on deterring police misconduct. *Id.* at *2. Here, the court of appeals determined that the police did nothing wrong in relying on the validity of the warrant as visible in the database, that the error in failing to quash the warrant was attributable to court administration, and that law enforcement officers should execute, not question, judicial orders. *Id.* at *1, *3. Thus, the court of appeals concluded that because there was no police

5

misconduct to deter, the exclusionary rule does not apply, and the district court was not justified in suppressing the evidence. *Id.* at *3.

In a special concurrence, one member of the court of appeals panel concluded that the district court erred but reasoned that the warrant was still valid at the time of Malecha's arrest, and thus the search was incident to lawful arrest. *Id.* at *4 (Frisch, J., concurring specially). Therefore, the concurrence concluded that there was no basis for the district court to apply the exclusionary rule. *Id.*

In the dissenting opinion, another member of the court of appeals panel noted that our court has only applied the good-faith exception to circumstances in which police obtain evidence in reliance on binding appellate precedent. *Id.* at *8 (Slieter, J., dissenting). Because only the supreme court and Legislature may extend existing law, and neither has adopted the good-faith exception under the present facts, the dissent disagreed with the decision to reverse the district court. *Id.* at *10.

We granted Malecha's request for further review.

## ANALYSIS

We first address whether the district court clearly erred in finding that the arrest warrant was quashed before Malecha's arrest. Then, we decide whether to adopt the good-faith exception to the exclusionary rule under the circumstances here.

### I.

First, we must determine whether the district court clearly erred in finding that the arrest warrant for Malecha had been quashed before her arrest. On a pretrial motion to suppress, we review the district court's factual findings for clear error and legal

6

determinations de novo. *State v. Leonard*, 943 N.W.2d 149, 155 (Minn. 2020). "A factual finding is clearly erroneous if it does not have evidentiary support in the record or if it was induced by an erroneous view of the law." *State v. Roberts*, 876 N.W.2d 863, 868 (Minn. 2016). In contrast, "[u]nder the de novo standard, we do not defer to the analysis of the courts below, but instead we exercise independent review." *Wheeler v. State*, 909 N.W.2d 558, 563 (Minn. 2018).

The State challenges the district court's finding that the arrest warrant had been quashed before Malecha's arrest, arguing that there is no evidence that the district court issued an order to that effect in December 2020. According to the State, the officers arrested Malecha on an active arrest warrant and the search that produced the controlled substances underlying her charges was therefore incident to a lawful arrest.

The evidence in the record, however, does not support the State's position. The record shows that the district court held a contested omnibus hearing on May 24, 2022. At the hearing, the State gave a recitation of undisputed facts, including:

> I think one of the facts that the State would also concede is I think that on December 15, Judge Long probably had at that time the intention to quash that warrant. We don't know for sure. We can base it off of that -- the notice of judicial determination. . . . But for whatever reason, that communication didn't get to law enforcement.

The "notice of judicial determination" referred to by the State was a document filed by a court administrator on March 8, 2021, the day after Malecha's arrest. The notice provided "verification that . . . Judge Long did grant the request to recall the warrant on December 14, 2020. The request was processed and the warrant was recalled on December 15, 2020."

In the order granting Malecha's motion to dismiss, the district court found that "[t]he sole reason law enforcement had to search Ms. Malecha in this case was the misinformation provided to them that there was an active arrest warrant for Ms. Malecha." The district court then found it "clear from the facts that the warrant was quashed by the District Court and thus was no longer active, regardless of what information was provided to law enforcement." Because the officers obtained the evidence pursuant to an unlawful search, the district court applied the exclusionary rule and suppressed the evidence.

Based on the State's concession on the record at the contested omnibus hearing that the district court intended to quash the warrant on December 15, 2020, and the notice of judicial determination verifying that the warrant was recalled on December 15, 2020, there is sufficient evidentiary support for the district court's finding that the warrant was quashed and not effective on the date of Malecha's arrest.[1] The factual finding is not clearly erroneous.

II.

Because Malecha's arrest warrant was quashed before her arrest, her arrest and search violated Article I, Section 10, of the Minnesota Constitution. *See* Minn. Const. art. I, § 10. The exclusionary rule is the normal remedy for such a violation. *See State v. Zanter*, 535 N.W.2d 624, 634 (Minn. 1995) (affirming the suppression of evidence

---

[1] A "notice of judicial determination" is commonly used by court administration to immediately inform parties of a district court's decision on a request or motion. Although we acknowledge the utility of such documents for this purpose, here the notice served to correct an error after-the-fact. We do not endorse the use of a notice of judicial determination for this corrective purpose, particularly when the notice lacks any acknowledgment, or explanation, of the earlier error.

obtained pursuant to parts of a warrant not supported by probable cause). We next consider whether to extend the good-faith exception to the exclusionary rule to the circumstances presented here. We begin by addressing the scope of the good-faith exception as recognized by the Supreme Court under the U.S. Constitution and then address our narrower application of the good-faith exception under the Minnesota Constitution. We then turn to whether the good-faith exception to the exclusionary rule applies under Minnesota law to the circumstances here, when police conduct an arrest and search pursuant to a quashed warrant that nevertheless appears active to law enforcement because of a clerical error of court administration.

A.

The Fourth Amendment to the U.S. Constitution and Article I, Section 10, of the Minnesota Constitution each protect the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Sargent*, 968 N.W.2d 32, 37 (Minn. 2021). A long-standing exception to the warrant requirement under the Fourth Amendment, however, is a search incident to lawful arrest, which allows the police "to conduct a 'full search of the person' who has been lawfully arrested." *State v. Bernard*, 859 N.W.2d 762, 766–67 (Minn. 2015) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

Neither the Fourth Amendment to the U.S. Constitution, nor Article I, Section 10, of the Minnesota Constitution identify the remedy available in the event of an unreasonable search or seizure by law enforcement. Thus, to "compel respect for the constitutional

guaranty" of the Fourth Amendment, the Supreme Court has recognized the exclusionary rule as a "prudential" doctrine that requires the suppression of illegally obtained evidence. *Davis v. United States*, 564 U.S. 229, 236 (2011) (citations omitted) (internal quotation marks omitted). The Supreme Court first recognized the rule in *Weeks v. United States*, 232 U.S. 383, 398 (1914), and applied it to the states through the Fourteenth Amendment in *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Although initially available as a remedy for any Fourth Amendment violation, the Supreme Court has since limited exclusion to circumstances that serve the rule's remedial goals. *Compare Mapp*, 367 U.S. at 655 ("[A]ll evidence obtained . . . in violation of the Constitution is . . . inadmissible in a state court."), *with United States v. Calandra*, 414 U.S. 338, 348 (1974) (restricting exclusion to "those areas where its remedial objectives are thought most efficaciously served"). As for what those remedial goals are, the Supreme Court originally recognized the deterrence of police misconduct *and* the preservation of judicial integrity as purposes of the exclusionary rule, but has subsequently identified deterrence as the sole purpose served by exclusion in federal jurisprudence. *Compare Elkins v. United States*, 364 U.S. 206, 217, 222 (1960) ("Its purpose is to deter—to compel respect for the constitutional guaranty . . . . But there is another consideration—the imperative of judicial integrity."), *with Davis*, 564 U.S. at 246 ("[W]e have said time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement.").

Starting with *United States v. Leon*, the Supreme Court limited the use of exclusion as a remedy through several "good faith" exceptions. 468 U.S. 897 (1984). In *Leon*, the Court decided whether the exclusionary rule applied to evidence obtained under a warrant

10

later declared invalid for lack of probable cause. *Id.* at 905. The Supreme Court concluded that if police act "in objective good faith or their transgressions have been minor," the "substantial social costs" of excluding relevant evidence outweigh the exclusionary rule's benefits, *id.* at 907–08, and observed that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. Thus, *Leon* counsels that the exclusionary rule applies only if suppressing the disputed evidence would have an appreciable deterrent effect on unlawful police conduct. *Id.* at 909.

The Supreme Court has since expanded the good-faith exception to other circumstances in which exclusion would not result in appreciable deterrence of unlawful police conduct. *See Illinois v. Krull*, 480 U.S. 340, 359–60 (1987) (rejecting exclusion when police reasonably rely on a statute later deemed unconstitutional); *Herring v. United States*, 555 U.S. 135, 137–38, 147 (2009) (rejecting exclusion when police reasonably rely on an arrest warrant database managed by law enforcement); *Davis*, 564 U.S. at 241 (rejecting exclusion when police obtain evidence in reasonable reliance on binding appellate precedent).

The Supreme Court applied the good-faith exception to circumstances analogous to the present facts in *Arizona v. Evans*. 514 U.S. 1 (1995). In *Evans*, Phoenix police arrested the defendant on a quashed warrant that appeared active to law enforcement because of a court administration clerical error. *Id.* at 4–5. In applying the good-faith exception, the Court distinguished between clerical errors by law enforcement and court employees. *Id.* at 14 (citing *State v. Evans*, 866 P.2d 869, 871 (Ariz. 1994)). Citing *Leon*, the Supreme Court stated that "the exclusionary rule was historically designed as a means of deterring

11

police misconduct, not mistakes by court employees." *Id.* (citing *Leon*, 468 U.S. at 916). The Supreme Court reasoned that "[i]f court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Id.* Because there was no evidence that court employees are inclined to violate Fourth Amendment rights, nor that excluding evidence would deter them from failing to inform police of quashed warrants, there was no basis to apply the exclusionary rule. *Id.* at 15. Thus, the Supreme Court recognized "a categorical exception to the exclusionary rule for clerical errors of court employees." *Id.* at 16.

In sum, the Supreme Court has specifically applied the good-faith exception to evidence obtained in reasonable reliance on a quashed arrest warrant that appears active to law enforcement because of a clerical court error, *Evans*, 514 U.S. at 15, and more generally limited the exclusionary rule's application to circumstances that deter unlawful police conduct.

B.

Although *Evans* is analogous to the facts at hand, its holding addresses exclusion in the context of a violation of the Fourth Amendment to the U.S. Constitution. In contrast, here Malecha's argument for exclusion is premised on a violation of Article I, Section 10, of the Minnesota Constitution. "In all cases, we employ our independent judgment in interpreting the Minnesota Constitution." *City of Golden Valley v. Wiebesick*, 899 N.W.2d 152, 157 (Minn. 2017). We most often exercise this independent judgment in deciding whether to grant greater *rights* under our state constitution. *See State v. Carter*, 697 N.W.2d 199, 211 (Minn. 2005) (holding that a drug-detection dog sniff outside of a

12

storage unit is a search under the Minnesota Constitution). But the mandate applies equally in determining whether a constitutional *remedy*, like exclusion, is available. *See, e.g.*, *Zanter*, 535 N.W.2d at 634 (excluding evidence obtained in violation of Article I, Section 10, because "the good faith of the police . . . cannot cure the clear insufficiency of the . . . warrant application"); *Garza v. State*, 632 N.W.2d 633, 639–40 (Minn. 2001) (applying the exclusionary rule despite law enforcement's good-faith reliance on an issued warrant because it lacked the "sufficiently particularized circumstances" required to justify an unannounced entry). Accordingly, *Evans* does not control here as to the remedy for a violation of the Minnesota Constitution. Instead, we must determine whether the good-faith exception applicable in *Evans* likewise applies under the Minnesota Constitution.

We have adopted the good-faith exception under the Minnesota Constitution in only one limited circumstance: when law enforcement officers obtain evidence in reasonable reliance on binding appellate precedent that specifically authorizes the police conduct at issue. *Lindquist*, 869 N.W.2d at 876. Since then, we have declined to extend the good-faith exception. *See Leonard*, 943 N.W.2d at 161 ("Because no binding appellate precedent authorizes a suspicionless search of a guest registry, the good-faith exception recognized in *Lindquist* does not apply here.").

In *Lindquist*, officers responded to a single-vehicle accident and learned that the occupants had fled the scene. 869 N.W.2d at 865. Upon apprehending Lindquist, who officers determined was the driver and who declined to undergo a preliminary breath test, the police arrested her and performed a warrantless blood draw. *Id.* At the time of

13

Lindquist's arrest, this court's decisions in *State v. Shriner*, 751 N.W.2d 538 (Minn. 2008), and *State v. Netland*, 762 N.W.2d 202 (Minn. 2009), permitted the warrantless blood draw.[2]  *Lindquist*, 869 N.W.2d at 877–78.  During the pendency of Lindquist's appeal, however, the Supreme Court decided *Missouri v. McNeely*, which overturned the single-factor exigency analysis that authorized the police to conduct the warrantless blood draw at issue in *Lindquist*.  *Id.* at 865 (citing *Missouri v. McNeely*, 569 U.S. 141 (2013)); *see McNeely*, 569 U.S. at 145 ("[E]xigency in this context must be determined case by case based on the totality of the circumstances.").  Thus, in *Lindquist* we addressed whether to exclude evidence obtained by the police pursuant to precedent issued by our court and binding at the time of the search, but which was subsequently overturned.  *Id.* at 865, 876–77.

To reach our holding in *Lindquist*, we looked to the Supreme Court's reasoning in *Davis*, 564 U.S. 229.  *Lindquist*, 869 N.W.2d at 868–69.  *Davis* dealt with an analogous issue and ultimately held that the exclusionary rule does not apply to evidence obtained in reasonable reliance on binding appellate precedent.  *Davis*, 564 U.S. at 241.  The Supreme Court, following federal good-faith jurisprudence, recognized that "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs," and

---

[2]     In *Shriner*, we held that the "rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant committed criminal vehicular operation."  751 N.W.2d at 545.  We extended *Shriner*'s single-factor exigency analysis to any circumstance where "chemical impairment is an element of the offense" in *Netland*.  762 N.W.2d at 214.

concluded that excluding evidence obtained in such circumstances would not deter police misconduct. *Id.* at 237–41.

Applying this reasoning in *Lindquist*, we stated that if police conduct a search in accordance with established law, but that law subsequently changes, "any error rests with judges and not the police," meaning exclusion "deters no police misconduct and imposes substantial social costs." *Lindquist*, 869 N.W.2d at 871 (quoting *Davis*, 564 U.S. at 249). Thus, adopting the good-faith exception articulated in *Davis*, we held that exclusion does not apply to evidence obtained in reasonable reliance on binding appellate precedent because the social costs of exclusion outweigh its deterrent benefit under those circumstances. *Id.*

Our holding in *Lindquist*, however, was decidedly narrow. *Id.* at 876 ("We note the narrowness of our holding . . . nothing in our opinion should be construed as authorizing the application of exceptions we have not explicitly adopted."). Further, we explicitly did not address whether the good-faith exception applies if police obtain evidence "pursuant to a facially valid search warrant later held to be deficient" or "to evidence obtained due to police negligence." *Id.* at 877. Although we "identified deterrence of police misconduct as the central purpose of the exclusionary rule," we also did not foreclose the consideration of other purposes of exclusion. *Id.* at 871.

Before *Lindquist*, we declined to address the applicability of the good-faith exception even when police acted in good-faith reliance on a warrant later found to lack probable cause, first in *Zanter*, 535 N.W.2d at 634, then in *Garza*, 632 N.W.2d at 638. In *Zanter*, this court affirmed the suppression of certain evidence obtained pursuant to a

15

warrant that was not supported by probable cause. 535 N.W.2d at 634. The State asked us to adopt a good-faith exception to the warrant requirement of the Minnesota Constitution. *Id.* Though we did not question that the police acted in good faith on an issued warrant, we determined that good faith could not "cure the clear insufficiency of the . . . warrant application." *Id.*

Similarly, in *Garza*, we held that law enforcement's unannounced entry pursuant to a search warrant was unconstitutional because the evidence presented in the supporting affidavit failed to meet the required standard for particularized circumstances. 632 N.W.2d at 638. The State asked us to adopt *Leon*'s good-faith exception because police relied on "a neutral magistrate's authorization" in conducting the unannounced entry. *Id.* at 639–40. We declined to do so, concluding that, even if the police acted in good faith, they "cannot cure the absence of particularized circumstances in the warrant application." *Id.* at 640 (citing *Zanter*, 535 N.W.2d at 634).

Although we did not expressly reject the good-faith exception in either *Zanter* or *Garza*, basing our decisions instead on the insufficiency of the warrant application, we also noted that even good-faith reliance on an issued warrant cannot cure violations of Article I, Section 10, of the Minnesota Constitution. *Zanter*, 535 N.W.2d at 634; *Garza*, 632 N.W.2d at 639–40. In each case we determined that exclusion was necessary to remedy the state constitutional violation, even though federal jurisprudence might not grant a similar remedy.

Continuing to recognize the importance of the exclusionary rule in Minnesota, we have declined to expand the good-faith exception further following *Lindquist*. *See*

*Leonard*, 943 N.W.2d at 161. Our reticence has not foreclosed discussions, however, of whether we should do so under the right circumstances. *Compare State v. Fawcett*, 884 N.W.2d 380, 391 (Minn. 2016) (Stras, J., dissenting) ("[I]n an appropriate case . . . I would be open to considering whether to adopt the good-faith exception in full."), *with Fawcett*, 884 N.W.2d at 391 (Lillehaug, J., dissenting) (claiming that the *Lindquist* "exception applies *only* when officers act pursuant to binding appellate precedent").

C.

We now address whether to extend the good-faith exception to these circumstances, or to exclude the illegally obtained evidence and remedy the violation of Article I, Section 10, of the Minnesota Constitution.[3]

As a threshold matter, the application of the good-faith exception in *Lindquist* does not control the present outcome because *Lindquist* arose under different circumstances and stemmed from reasoning not relevant here.

---

[3]   Malecha argues that because we have previously interpreted Article I, Section 10, of the Minnesota Constitution to provide greater protections than the Fourth Amendment, we should apply the exclusionary rule here, even though the Supreme Court has declined to apply the remedy in the federal context. In some circumstances, we have granted greater constitutional protections under Article I, Section 10, of the state constitution than the federal counterpart affords. *See Carter*, 697 N.W.2d at 209, 211 (holding that a dog sniff outside a storage unit is a search under Article I, Section 10, though it is not a search under the Fourth Amendment); *In re Welfare of B.R.K.*, 658 N.W.2d 565, 578 (Minn. 2003) (holding that short-term social guests have a reasonable expectation of privacy in a home under Article I, Section 10, though there is no such expectation under the Fourth Amendment). As *Lindquist* recognized, however, these cases dealt with the provision of constitutional rights, not the availability of constitutional remedies. 869 N.W.2d at 872. Deciding whether there was a constitutional violation is a " 'separate, analytically distinct issue' " from determining the remedy for the violation. *Id.* (quoting *Davis*, 564 U.S. at 243). Therefore, that jurisprudence is inapposite in deciding whether the exclusionary rule applies. *See id.*

Notably, the facts here are fundamentally different from those underlying our reasoning in *Lindquist*. In *Lindquist*, the police acted in accordance with Minnesota law, as established by binding appellate precedent, when conducting the challenged search. The officers in *Lindquist* did not act unlawfully; their actions were based on an appellate court's misinterpretation of law. The mistake in *Lindquist* was ours, given that *Shriner* and *Netland* were decided incorrectly, as we learned from the Supreme Court's decision in *McNeely*, which abrogated our earlier holdings. *See Lindquist*, 869 N.W.2d at 871 ("When the law changes after a search such that the search now violates the Fourth Amendment to the U.S. Constitution or Article I, Section 10 of the Minnesota Constitution, any error rests with judges and not the police."). Because law enforcement could not be held responsible for a change in the law, applying the good-faith exception was appropriate.

Additionally, there was little risk that the exception announced in *Lindquist* would easily extend to other circumstances, as the government actors involved in the constitutional violation, the police officers, engaged in conduct that was neither wrongful nor negligent. The *Lindquist* holding was confined to circumstances in which a search or seizure is lawful when it occurs, but the legal basis for that search or seizure is subsequently overturned. 869 N.W.2d at 865, 876. Further, the holding only extended to circumstances in which the overturned precedent favored the State's position, an additional limit on its reach. *Id.* at 873 ("Another limiting factor is that the exception applies only when a case overrules binding appellate precedent that previously worked in the State's favor.").

In contrast, the facts here show that court administration made clerical errors that resulted in an unlawful search, for which they can properly be held responsible.

18

Specifically, court employees failed to inform the Rice County Sheriff's Office records division that Malecha's warrant was recalled in December 2020, and the Office was then unable to remove it from its files and the national database, as it was never informed that the warrant was quashed. In March 2021, because of the error by court personnel, police mistakenly and unlawfully arrested Malecha pursuant to the quashed warrant that still appeared valid in their database.

Unlike *Lindquist*, here the constitutional violation was closely connected to the government error because the arrest and search were premised on a quashed warrant that court employees failed to update, making the arrest and search unlawful when they occurred, rather than being lawful in the moment, but subsequently deemed unconstitutional. The difficulty of distinguishing between errors of police on the one hand, and courts on the other, in an interbranch, computerized warrant database is another critical difference between the present circumstances and *Lindquist*. Only an appellate court can announce changes in law, but errors like the one at issue here may stem from either (or both) the courts or law enforcement. Thus, the reasoning in *Lindquist* was more easily confined to its facts.

Because *Lindquist* does not control, our decision instead turns on whether excluding the illegally obtained evidence will serve the remedial goals of the exclusionary rule. The "central purpose" of Minnesota's exclusionary rule is to deter police misconduct. *Lindquist*, 869 N.W.2d at 871 ("Like the Supreme Court, we have identified deterrence of police misconduct as the *central* purpose of the exclusionary rule." (emphasis added)). Our precedent, however, does not limit us to considering whether exclusion deters only *police*

19

misconduct.[4]  *See id.*  Rather, because the police and courts work together to manage government records, particularly the arrest warrant database, it is appropriate here to consider whether exclusion would deter government misconduct generally, including negligent misconduct.  Justice Ginsburg recognized that the exclusion of evidence may deter even negligent conduct in her *Evans* dissent, stating "[i]t has been suggested that an exclusionary rule cannot deter carelessness, but can affect only intentional or reckless misconduct.  This suggestion runs counter to a premise underlying all of negligence law—that imposing liability for negligence, *i.e.*, lack of due care, creates an incentive to act with greater care."  *Evans*, 514 U.S. at 29 n.5 (Ginsburg, J., dissenting).

In this age of expansive and rapidly evolving technology use, separating the record-keeping practices of police from those of court administration is no easy task.  *Id.* at 29 (Ginsburg, J., dissenting) ("In this electronic age, particularly with respect to recordkeeping, court personnel and police officers are not neatly compartmentalized actors.

---

[4]    Although the Supreme Court has declined to consider any reason justifying exclusion beyond deterrence, this court has never used such absolute language, instead emphasizing that deterrence is *a* purpose, but not the *only* purpose, of exclusion. *Lindquist*, 869 N.W.2d at 871; *State v. Hardy*, 577 N.W.2d 212, 217 (Minn. 1998) ("[T]he *primary* purpose of the exclusionary rule is to deter police misconduct." (emphasis added)).  For example, we have previously recognized preserving judicial integrity as a goal of the exclusionary rule.  *See State v. Lucas*, 372 N.W.2d 731, 737 (Minn. 1985) (applying an exclusionary rule analysis to determine the admissibility, in a Minnesota prosecution, of evidence obtained in another state, "[t]aking into account the several policy reasons underlying the exclusionary rule," and concluding that the trial court correctly refused to exclude evidence because there was no police misconduct to deter, nor would admitting the evidence "compromise judicial integrity"); *State v. Earnest*, 293 N.W.2d 365, 371–72 (Minn. 1980) (Rogosheske, J., concurring specially) (acknowledging the exclusionary rule's "dual purposes of deterring future unlawful police misconduct and preserving the integrity of the courts," then arguing that exclusion should not be available as a remedy in the probation system).

20

Instead, they serve together to carry out the State's information-gathering objectives."). As occurred here, an arrest warrant database relies on interbranch coordination to accurately supply and update warrant information, and on state actors to act diligently in doing so. This diligence is necessary to protect the Article I, Section 10, guarantee to be free from unreasonable search and seizure.

Thus, in addition to the central object of deterring unlawful *police* conduct, we recognize other purposes served by exclusion, including the related goal of more generally deterring unlawful *government* conduct.

Here, we conclude that when police obtain evidence during a search incident to arrest on a quashed warrant that appears active to law enforcement because of a clerical court error, exclusion serves the purpose of deterring unlawful government conduct. We recognize that applying the exclusionary rule can deter even clerical errors and provide a powerful incentive to the government to promote the prompt and careful updating of computer records. If government actors generally, rather than only law enforcement, know that the negligent failure to communicate the recall of an arrest warrant will result in the exclusion of evidence obtained pursuant to that warrant, those actors will have an incentive to exercise better judgment, act with greater diligence, and implement improved policies to avoid the costs associated with such errors.

Applying the exclusionary rule here establishes that court employees, not only law enforcement officers, are held to account for errors that result in constitutional violations. Imposing the sanction of exclusion here promotes the public perception of fairness in the judicial process, particularly as illegally obtained evidence would otherwise be admitted

21

by the same court system whose personnel caused the error that led to the unlawful search or seizure.

Relatedly, we emphasize that, under these facts and in accordance with our exclusionary rule jurisprudence, the benefits of excluding illegally obtained evidence outweigh the costs when the constitutional violation stems from a court clerical error. *See Lindquist*, 869 N.W.2d at 871 ("When the law changes after a search such that the search now violates the Fourth Amendment to the U.S. Constitution or Article I, Section 10 of the Minnesota Constitution, any error rests with judges and not the police. 'Excluding evidence in such cases deters no police misconduct and imposes substantial social costs.' " (quoting *Davis*, 564 U.S. at 249)). Under these circumstances, exclusion deters unlawful government conduct by incentivizing individual diligence, and best practices and policies generally. Although here, Malecha happened to have drugs on her person, in other instances, a similar mistake could result in the arrest and search of a wholly innocent individual. This hypothetical highlights the importance of deterring court errors, particularly in areas of substantial, interbranch coordination, like the warrant database.

In contrast to these benefits, here there are minimal costs to exclusion, as clerical court errors rarely result in warrantless searches and seizures, and exclusion simply puts the government in the same position as it would have been absent the infringement.

The benefits of excluding the illegally obtained evidence here outweigh the costs. Therefore, we hold that under the Minnesota Constitution, the good-faith exception to the exclusionary rule does not extend to a search and arrest based on a quashed warrant that appears active to law enforcement because of a clerical error of court administration. We

decline here, however, as we did in *Lindquist*, to announce a broad rule rejecting the use of the good-faith exception under any other circumstances.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and reinstate the district court order dismissing the charges.

Reversed.


PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.